UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PAMELLA CORTES, LETICIA GONZALEZ and        :
ARIANA REYES, on behalf of themselves and   :
all others similarly situated,              :
                                            :
                          Plaintiffs,       :
                                            :                    **COMPLAINT**
              -against-                      :
                                            :
JUQUILA MEXICAN CUISINE CORP. d/b/a         :
JUQUILA MEXICAN CUISINE, JUQUILA KITCHEN :   **COLLECTIVE ACTION**
AND BAR CORP. d/b/a JUQUILA KITCHEN         :
& BAR, TEOFILA MENDEZ, and                  :
CRISTOBAL BONILLA,                          :
                                            :
                          Defendants.       :
------------------------------------------------------------------------X

Plaintiffs Pamella Cortes, Leticia Gonzalez, and Ariana Reyes (collectively,

"Plaintiffs"), on behalf of themselves and all others similarly situated, by their

attorneys Pechman Law Group PLLC, complaining of Defendants Juquila Mexican

Cuisine Corp. d/b/a Juquila Mexican Cuisine, Juquila Kitchen and Bar Corp. d/b/a

Juquila Kitchen & Bar, Teofila Mendez, and Cristobal Bonilla (collectively, "Juquila" or

"Defendants"), allege:

## NATURE OF THE ACTION

1.      This action is brought to recover unpaid minimum and overtime wages,

unpaid spread-of-hours pay, and other statutory damages pursuant to the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 190 *et

seq.* ("NYLL"), and to recover damages for gender discrimination under the New York

Executive Law § 296 *et seq.* ("Executive Law"), the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"), and the Equal Pay Act of 1963,

29 U.S.C.S. § 206(d) *et seq.* ("Equal Pay Act").

2.      Juquila Mexican Cuisine and Juquila Kitchen & Bar are Mexican restaurants located in Queens, New York that serve traditional food and drinks from the Mexican region of Oaxaca.  The servers at both restaurants are paid below the legally required minimum wage and overtime rates, are not given spread-of-hours pay, and are unlawfully obligated to pay for customers' food on a regular basis.  For example, the servers have to pay when a customer returns a meal to the kitchen or "dines and dashes," *i.e.* leaves without paying the bill.  Servers are also charged for the traditional Mexican style clothing they are required to wear as uniforms.

3.      Defendants have also subjected Plaintiffs and other female servers to a discriminatory workplace environment in which the male servers are paid more than the female servers for completing the same work.

4.      Plaintiffs seek compensation for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours pay, unlawful deductions, liquidated damages, pre- and post-judgment interest, damages for mental anguish, punitive damages, and attorneys' fees and costs pursuant to the FLSA, NYLL, Executive Law and NYCHRL.

## JURISDICTION

5.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

6.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, as Juquila Mexican Cuisine and Juquila Kitchen & Bar are located in the Eastern District of New York.

## THE PARTIES

**Plaintiffs**

7.       Pamella Cortes ("Cortes") resides in Queens, New York.

8.       Cortes was employed as a server at Juquila Mexican Cuisine from approximately January 2016 to June 2016.

9.       Leticia Gonzalez ("Gonzalez") resides in Queens, New York.

10.      Gonzalez was employed as a server at Juquila Mexican Cuisine from approximately September 2015 to December 2016.

11.      Ariana Reyes ("Reyes") resides in Queens, New York.

12.      Reyes was employed as a server at Juquila Mexican Cuisine from approximately July 2016 to March 2017.

**Defendant Juquila Mexican Cuisine Corp.**

13.      Juquila Mexican Cuisine Corp. is a New York corporation that owns, operates, and does business as Juquila Mexican Cuisine located at 40-12 83rd Street, Elmhurst, NY 11373.

14.      Juquila Mexican Cuisine is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

15.      Juquila Mexican Cuisine has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

16.      Juquila Mexican Cuisine had an annual gross volume of sales in excess of $500,000 in 2014, 2015 and 2016.

17.      Juquila Mexican Cuisine is projected to have an annual gross volume of sales in excess of $500,000 at year's end.

3

**Defendant Juquila Kitchen and Bar Corp.**

18.     Juquila Kitchen and Bar Corp. is a New York corporation that owns, operates, and does business as Juquila Kitchen & Bar located at 39-05 29th Street, Long Island City, New York, 11101.

19.     Juquila Kitchen & Bar is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

20.     Juquila Kitchen & Bar has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

21.     Juquila Kitchen & Bar opened for business in 2017 and is projected to have an annual gross volume of sales in excess of $500,000 at year's end.

**Juquila Mexican Cuisine and Juquila Kitchen & Bar Are Joint Employers**

22.     Juquila Mexican Cuisine and Juquila Kitchen & Bar have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

23.     Defendants Teofila Mendez and Cristobal Bonilla are owners of both Juquila Mexican Cuisine and Juquila Kitchen & Bar.

24.     Defendants engage in the same unlawful pay practices at both Juquila Mexican Cuisine and Juquila Kitchen & Bar.

25.     Juquila Mexican Cuisine and Juquila Kitchen & Bar share a common food and drink menu and restaurant logo.

4

26.     The menus for both restaurants direct readers to the same website: juquilamexicancuisine.com.[1]

27.     Juquila Mexican Cuisine and Juquila Kitchen & Bar interchange and share employees.

28.     There is common purchasing of ingredients for both Juquila Mexican Cuisine and Juquila Kitchen & Bar.

29.     Events hosted at Juquila Kitchen & Bar, including the grand opening celebration held on May 5, 2017, have been advertised on flyers posted throughout Juquila Mexican Cuisine.

30.     Employees are subject to the same employment policies, practices, and procedures at both Juquila Mexican Cuisine and Juquila Kitchen & Bar.

31.     Employees who work at both locations do not undergo any new training when working at one or the other location.

**Defendant Teofila Mendez**

32.     Defendant Teofila Mendez ("Mendez") is an owner of Juquila Mexican Cuisine and Juquila Kitchen & Bar.

33.     Mendez has and exercises the authority to hire and fire employees, direct the manner in which employees perform their daily duties and assignments, and establishes and implements the pay practices and work and scheduling policies at Juquila Mexican Cuisine and Juquila Kitchen & Bar.

34.     Mendez is regularly present at the restaurants and directs the work done by employees.

---

[1] As of June 30, 2017, the website is inactive but is still listed on the advertising for both locales.

35.     Mendez set the schedules and pay rates of employees, including Plaintiffs.

36.     Mendez personally sold Plaintiffs the uniform items they were required to wear.

37.     Mendez oversees the hiring and firing of employees.

38.     Mendez is an "employer" within the meaning of the FLSA and NYLL.

**Defendant Cristobal Bonilla**

39.     Defendant Cristobal Bonilla ("Bonilla") is an owner of Juquila Mexican Cuisine and Juquila Kitchen & Bar.

40.     Bonilla has and exercises the authority to hire and fire employees, direct the manner in which employees perform their daily duties and assignments, and establishes and implements the pay practices and work and scheduling policies at Juquila Mexican Cuisine and Juquila Kitchen & Bar.

41.     Bonilla is listed as the principal on the New York State Liquor License for Juquila Mexican Cuisine.

42.     Bonilla is regularly present at the restaurants and directs the work done by employees.

43.     In addition to general supervision of the employees, Bonilla, a chef, controls the restaurants' menu items and food preparation techniques.

44.     Bonilla is an "employer" within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

45.     The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons, *i.e.*, servers at Juquila Mexican Cuisine and Juquila Kitchen & Bar since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

46.     The FLSA Collective consists of approximately thirty similarly situated current and former servers of Juquila Mexican Cuisine and Juquila Kitchen & Bar who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime and other wages.

47.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, the following:

    a. failing to pay the servers the statutory minimum wage for all hours worked;

    b. failing to pay the servers at the proper overtime rate for all hours worked over forty;

    c. deducting from the servers' wages for customer walkouts, customer complaints, and uniform expenses;

    d. withholding the tips left by customers for servers;

    e. failing to pay servers one hour's pay at the full minimum hourly wage rate for each day during which the employee worked more than ten hours; and

    f. failing to keep accurate records of hours worked by employees.

48.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and the NYLL.

49.     Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damage to Plaintiffs and the FLSA Collective.

50.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily

identifiable, and locatable through Defendants' records.  These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Pamella Cortes

51.     From January 2016 to approximately April 2016, Cortes was scheduled to work from 11:00 p.m. to 6:00 a.m., six days per week.

52.     Starting in or about May 2016, Cortes was scheduled to work from 9:00 a.m. to 5:00 p.m. or 5:00 p.m. to 11:00 p.m., six days per week.

53.     Throughout her time employed by Defendants, Cortes regularly stayed about an hour past the end of her scheduled work shift to finish waiting on customers' tables and/or clean the restaurant.

54.     About seven times per month, Cortes was asked to work extra shifts resulting in approximately fifty to sixty hours worked per week.

55.     When Cortes worked an extra shift, it usually resulted in her working double shifts, *i.e.* two shifts in one day that spanned across more than ten hours per workday.

56.     Throughout her employment, Defendants paid Cortes and all other female servers at a rate of $4.50 per hour for all hours worked, including hours worked over forty per workweek.

57.     This rate of pay was below the state and federal minimum wage rates.

58.     Cortes and other servers regularly worked overtime, *i.e.* more than forty hours per week, but did not receive pay at the overtime rate of one-and-one-half (1 ½) the minimum wage rate for those hours.

59.     Defendants failed to pay Cortes and other servers spread-of-hours pay when the length of their workday exceeded ten hours.

60.     Defendants paid Cortes and other servers in cash and did not provide them with weekly wage statements accurately listing, *inter alia*, hours worked and rates of pay.

61.     Defendants also failed to furnish Cortes and other servers with a wage notice at the time of hiring.

**Leticia Gonzalez**

62.     Throughout her employment, Gonzalez usually worked the overnight shift which was scheduled to last from 11:00 p.m. to 6:00 a.m.

63.     Though Gonzalez's shifts were scheduled to end at 6:00 a.m., she usually stayed working until about 7:30 a.m. because she was required to clean the restaurant and set up for the breakfast shift.

64.     From September 2015 to approximately mid-November 2015, Gonzalez worked the overnight shift six days per week.

65.     From approximately late-November 2015 to mid-April 2016, Gonzalez worked the overnight shift seven days per week.

66.     From approximately late-April 2016 to September 2016, Gonzalez worked the overnight shift six days per week.

67.     From approximately mid-September 2016 to December 2016, Gonzalez worked the overnight shift five days per week.

68.     About five times per month, Gonzalez worked extra shifts resulting in approximately fifty to sixty hours worked per week.

69.     When Gonzalez worked an extra shift it usually resulted in her working double shifts, *i.e.* two shifts in one day that spanned across more than ten hours per workday.

70.     Throughout her employment, Defendants paid Gonzalez and all other female servers at a rate of $4.50 per hour for all hours worked, including hours worked over forty per week.

71.     This rate of pay was below the state and federal minimum wage rates.

72.     Gonzalez and other servers regularly worked overtime, *i.e.* more than forty hours per week, but did not receive pay at the overtime rate of one-and-one-half (1 ½) the minimum wage rate for those hours.

73.     Defendants failed to pay Gonzalez and other servers spread-of-hours pay when the length of their workday exceeded ten hours.

74.     Defendants paid Gonzalez and other servers in cash and did not provide them with weekly wage statements accurately listing, *inter alia,* hours worked and rates of pay.

75.     Defendants also failed to furnish Gonzalez and other servers with a wage notice at the time of hiring.

**Ariana Reyes**

76.     Reyes' work schedule varied from week to week, but she usually worked five or six days per week, from 9:00 a.m. to 5:00 p.m.

77.     Reyes regularly stayed approximately one hour past the end of her scheduled work shift to finish waiting on customers' tables and / or clean the restaurant.

78.     About five times per month, Reyes worked extra shifts resulting in up to sixty hours of work per week.

79.     When Reyes worked an extra shift it usually resulted in her working double shifts, *i.e.* two shifts in one day that spanned across more than ten hours per workday.

80.     Throughout her employment, Defendants paid Reyes and all other female servers at a rate of $4.50 per hour for all hours worked, including hours worked over forty per week.

81.     This rate of pay was below the state and federal minimum wage rates.

82.     Reyes and other servers regularly worked overtime, *i.e.* more than forty hours per week, but did not receive pay at the overtime rate of one-and-one-half (1 ½) the minimum wage rate for those hours.

83.     Defendants failed to pay Reyes and other servers spread-of-hours pay when the length of their workday exceeded ten hours.

84.     Defendants paid Reyes and other servers in cash and did not provide them with weekly wage statements accurately listing, *inter alia*, hours worked and rates of pay.

85.     Defendants also failed to furnish Reyes and other servers with a wage notice at the time of hiring.

## UNLAWFUL DEDUCTIONS

**Paying for Customers' Meals**

86.     Defendants have regularly deducted from Plaintiffs' and other servers' wages to cover overhead expenses, such as for customer walkouts or the cost of meals returned to the kitchen by customers.

87.     Plaintiffs estimate that they had to pay for a customer's order at least three times per week.

88.     For example, on one occasion in or about December 2016, Reyes was required to pay for a customer who ordered beverages and enchiladas but then left without paying.  The total bill she had to cover amounted to $28.50.

89.     On one occasion in the spring of 2016, Cortes served a customer an order of pozole with pork.  Upon receiving the meal, the customer decided that he wanted the pozole with chicken instead.  The customer explained to the manager that it was his mistake to have ordered the pork instead of the chicken and said that Cortes did nothing wrong.  Despite this explanation, because a new meal had to be prepared for the customer, Cortes was required to pay for the pork pozole dish.  This cost $10.95.

90.     Because Gonzalez usually worked overnight, she often served customers who had been out drinking and arrived to the restaurant intoxicated.  These customers were more likely than others to "dine and dash" or complain about a meal and order something else instead.  Gonzalez estimates that she spent about $450 of her own money covering the bills of customers who failed to pay the bill or returned food to the kitchen.

91.     On more than one occasion, Gonzalez confronted Defendants saying it was unfair that servers had to pay the bills of customers.  Defendants insisted that this was their policy and that anyone who did not like it could leave.

92.     Defendants do not take the cost of paying customers' bills into account in determining whether Plaintiffs and other servers are earning the minimum wage per hour worked.

**Uniforms**

93.     While working for the Defendants, Plaintiffs and all other female servers were required to purchase and wear specific uniform items.

94.     Male servers did not have to buy a uniform. They were simply required to wear black pants and a black shirt.

95.     Plaintiffs and all other female servers had to purchase and wear traditional Mexican embroidered blouses as uniforms while working.

96.     The blouses are imported from Mexico by Defendant Bonilla.

97.     Defendants charged $10 to $20 per blouse.

98.     For example, Gonzalez purchased a total of eight blouses while working for Defendants.  Gonzalez was charged $20 each for the first two blouses she bought. She was later charged $10 per blouse.

99.     Cortes purchased a total of three blouses while working for Defendants and was charged $20 for each blouse.

100.    Reyes purchased a total of five blouses while working for Defendants and was charged $10 per blouse.

101.    Defendants do not provide any reimbursement for the costs of buying, maintaining, and laundering uniform items.

102.    Defendants do not take uniform expenses into account in determining whether Plaintiffs and other female servers are earning the minimum wage per hour worked.

103.    Uniform expenses and overhead cost deductions were primarily for the benefit and convenience of Defendants and operated as de facto deductions from the servers' wages.

**TIP MISAPPROPRIATION**

104.    Approximately once per month, Defendants retained the tips left for the servers by customers who paid by credit card.

105.   On those occasions, when the servers asked Defendants for the credit card tips that were left for them by customers, Defendants claimed that they would pay them later, but did not follow through.

106.   For example, at least five times, Defendants told Plaintiffs that they could not be paid their credit card tips because Defendant Mendez had already closed out of the computer system used to calculate sales.  Mendez said that it was too late to go back into the computer system and figure out what was due to any individual server. Plaintiffs were not given those tips.

107.   Under the FLSA and the NYLL, employers are prohibited from sharing in the tips received by "tipped employees."  Section 196(d) of the NYLL provides that an employer cannot accept "any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

## SEX DISCRIMINATION

108.   Defendants pay Plaintiffs and other female servers less than their male counterparts.

109.   Plaintiffs and the other female servers have the same work responsibilities and requirements as male servers.

110.   For example, the male and female servers work side by side taking orders from customers, running food to tables, and cleaning the restaurant.

111.   Male servers are paid $5.50 per hour, $1.00 more per hour than the female employees of the same title.

112.   Male servers who were hired after Plaintiffs were paid $5.50 as their starting rate of pay, despite the fact that Plaintiffs had more experience.

113.    Plaintiffs were paid $4.50 per hour throughout their employment and were never offered a raise or given the opportunity to earn higher wages equal to those of their male peers.

114.    The women employed by Defendants are systematically discriminated against and paid less due solely to their sex.

### FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

115.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

116.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the FLSA Collective.

117.    Plaintiffs and the FLSA Collective are employees within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

118.    Defendants were required to pay to Plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

119.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because, inter alia:

  a.    Defendants were required to but failed to inform Plaintiffs and the FLSA Collective of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m); and

  b.    made unlawful deductions from Plaintiffs and the FLSA Collective's pay, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting regulations.

120.    Defendants failed to pay Plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

121.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to

comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

122.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

123.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

124.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and servers.

125.     Defendants failed to pay Plaintiffs and other servers the minimum wages to which they are entitled under the NYLL.

126.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the Plaintiffs and other servers minimum hourly wages.

127.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and servers who opt-in to this action are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

128.    Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

129.    Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times their regular rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

130.    Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

131.    Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages for all the hours they worked in excess of forty in a workweek.

132.    Defendants did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

133.    Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

134.    Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

135.    Defendants are employers within the meaning of NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and other servers.

136.    Under the NYLL and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs and servers one and one (1½) half times the regular rate of pay for all hours worked in excess of forty per workweek.

137.    Defendants failed to pay Plaintiffs and servers the overtime wages to which they were entitled under the NYLL.

138.    Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and servers overtime wages.

139.    Due to Defendants' willful violations of the NYLL, Plaintiffs and servers who opt-in to this action are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**FIFTH CLAIM**
**(New York Labor Law – Spread-of-Hours Pay)**

140.    Plaintiffs repeat and re-allege all foregoing paragraphs as if fully set forth herein.

141.    Defendants willfully failed to pay Plaintiffs and other servers additional compensation of one hour's pay at the minimum hourly wage rate for each day in which their shift spanned more than ten hours.

142.    By Defendants' failure to pay Plaintiffs and other servers spread-of-hours pay, Defendants willfully violated the NYLL Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §146-1.6.

143.    Due to Defendants' willful violations of the NYLL, Plaintiffs and servers who opt-in to this action are entitled to recover unpaid spread-of-hours pay,

reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

### SIXTH CLAIM
### (New York Labor Law – Unlawful Deductions)

144.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

145.    New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

146.    Defendants deducted money from Plaintiffs' and the servers' pay to cover non-payment by customers.

147.    Defendants' knowing and intentional deductions from the pay of the Plaintiffs and servers are willful violations of the NYLL and supporting Department of Labor Regulations.

148.    Due to Defendants' willful violations of the NYLL, Plaintiffs servers who opt-in to this action are entitled to recover from Defendants the amounts of any unlawful deductions and/or payments, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SEVENTH CLAIM
### (New York Labor Law – Uniforms)

149.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

150.    Defendants required Plaintiffs and other female servers to wear uniforms.

151.    Defendants unlawfully required Plaintiffs and other female servers to launder and maintain their uniforms and failed to provide them with pay in addition to the minimum wage for these costs, in violation of NYLL and its supporting regulations, N.Y.C.R.R. § 146.

152.    Plaintiffs and other female servers incurred costs laundering and maintaining their uniforms for the benefit and convenience of Defendants.

153.    It was Defendants' policy, and pattern or practice not to pay for the laundering and maintenance of Plaintiffs' and other female servers' uniforms, and not to reimburse them for these costs.

154.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and female servers who opt-in to this action are entitled to recover from Defendants the costs incurred purchasing, laundering, and maintaining the uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### EIGHTH CLAIM
**(New York Labor Law - Illegal Deductions from Gratuities)**

155.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

156.    New York Labor Law § 193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law.

157.    New York Labor Law § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

158.    At all times relevant, Defendants demanded or accepted, directly or indirectly, or retained a portion of gratuities belonging to Plaintiffs and other servers.

159.    At all times relevant, Defendants have been agents or officers of a corporation within the meaning of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor regulations.

160.    By Defendants' knowing or intentional demand for, acceptance of, and/or retention of the gratuities paid by customers, defendants have willfully violated NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

161.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and servers who opt-in to this action are entitled to recover from Defendants their unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### NINTH CLAIM
### (NYLL – Wage Theft Prevention Act – Failure to Provide Wage Notices)

162.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

163.    The NYLL and Wage Theft Prevention Act ("WTPA"), as well as NYDOL regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

164.    From its enactment on April 9, 2011, through 2014, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

165.    In violation of NYLL § 191, Defendants failed to furnish to Plaintiffs and other servers at the time of hiring, whenever there was a change to their rate of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

166.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and servers who opt-in to this action are entitled to recover from Defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**TENTH CLAIM**
**(NYLL – Wage Theft Prevention Act – Failure to Provide Wage Statements)**

167.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

168.    The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

169.    Throughout Plaintiffs' employment with Defendants, Defendants paid Plaintiffs and other servers without providing a wage statement at the end of every pay period accurately listing, inter alia: the regular rate or rates of pay; the overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

170.    Defendants failed to furnish Plaintiffs and other servers with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of the NYLL § 195(3).

171.     Due to Defendants' violation of NYLL § 195(3), Plaintiffs and serves who opt-in to this action are entitled to recover from Defendants liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## ELEVENTH CLAIM
### (Sex Discrimination Under the New York State Executive Law)

172.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

173.     Defendants have four or more employees.

174.     Defendant Juquila Mexican Cuisine Corp. is an "employer" within the meaning of § 296(1) of the Executive Law.

175.     Defendant Juquila Kitchen and Bar Corp.  is an "employer" within the meaning of § 296(1) of the Executive Law.

176.     Defendant Teofila Mendez is an "employer" within the meaning of § 296(1) of the Executive Law.

177.     Defendant Cristobal Bonilla is an "employer" within the meaning of § 296(1) of the Executive Law.

178.     Defendants participated in the discriminatory conduct giving rise to this claim.

179.     Defendants discriminated against Plaintiffs and female servers by paying them lower wages than the male servers.

180.     The female servers and the male servers perform the same job and substantially similar work.

181.     As a result of Defendants' discriminatory acts, Plaintiffs and other female servers that opt-in to this action are entitled to monetary damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## TWELFTH CLAIM
### (Sex Discrimination Under the New York City Human Rights Law)

182.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

183.     Defendant Juquila Mexican Cuisine Corp. is an "employer" within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

184.     Defendant Juquila Kitchen and Bar Corp. is an "employer" within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

185.     Defendant Teofila Mendez is an "employer" within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a) and a "person" or "agent" of Juquila Mexican Cuisine Corp. and Juquila Kitchen and Bar Corp. within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

186.     Defendant Cristobal Bonilla is an "employer" within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a) and a "person" or "agent" of Juquila Mexican Cuisine Corp. and Juquila Kitchen and Bar Corp. within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

187.    Defendants discriminated against Plaintiffs and female servers by fostering and condoning a work environment that underpaid females due solely to the fact that they are women.

188.    Defendants discriminated against Plaintiffs and female servers in violation of the NYCHRL by, *inter alia,* singling out women to pay lower wages than men that do the same work.

189.    As a result of Defendants' discriminatory acts, Plaintiffs and female servers that opt-in to this action are entitled to monetary damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

190.    Defendants acted intentionally and with malice and reckless indifference to Plaintiffs and the female servers' rights under the New York City Human Rights Law and are thereby liable to Plaintiffs for punitive damages under the New York City Human Rights Law.

## THIRTEENTH CLAIM
### (Discrimination Under the Equal Pay Act)

191.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

192.    Defendant Juquila Mexican Cuisine Corp. is an "employer" within the meaning of 29 U.S.C.S. § 203(e).

193.    Defendant Juquila Kitchen and Bar Corp.  is an "employer" within the meaning of 29 U.S.C.S. § 203(e).

194.    Defendant Teofila Mendez is an "employer" within the meaning 29 U.S.C.S. § 203(e).

195.    Defendant Cristobal Bonilla is an "employer" within the meaning of 29 U.S.C.S. § 203(e).

196.     Defendants participated in the discriminatory conduct giving rise to this claim.

197.     Defendants discriminated against Plaintiffs and female servers in violation of the Equal Pay Act by paying higher wages to employees of the opposite sex for equal work on jobs that require equal skill, effort, and responsibility, and are performed under similar working conditions.

198.     As a result of Defendants' discriminatory acts, Plaintiffs and female servers that opt-in to this action are entitled to monetary damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

a.     authorizing the issuance of notice at the earliest possible time to all servers who were employed by Defendants during the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b.     declaring that Defendants have violated the minimum and overtime wage provisions of the FLSA and the NYLL;

c.     declaring that Defendants have violated the spread-of-hours pay provisions of the NYLL and New York State Department of Labor Regulations;

d.     declaring that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

e.     declaring that Defendants violated the New York State Executive Law, the New York City Human Rights Law, and the Equal Pay Act;

    f.  declaring that Defendants' violations of the FLSA and NYLL were willful;

    g.  awarding Plaintiffs and the FLSA Collective unpaid minimum and overtime wages;

    h.  awarding Plaintiffs and the FLSA Collective unpaid spread-of-hours pay;

    i.  awarding Plaintiffs and the FLSA Collective damages for unauthorized deductions;

    j.  awarding Plaintiffs and members of the FLSA Collective damages for unreimbursed uniform expenses;

    k.  awarding Plaintiffs and the FLSA Collective liquidated damages pursuant to the FLSA and to the NYLL;

    l.  awarding Plaintiffs and the FLSA Collective liquidated damages as a result of Defendants' failure to furnish accurate wage statements and annual notices pursuant to the NYLL;

    m.  awarding Plaintiffs and the FLSA Collective pre- and post-judgment interest under the NYLL, Executive Law, NYCHRL, and the Equal Pay Act;

    n.  awarding Plaintiffs and members of the FLSA Collective punitive damages for Defendants' intentional disregard of and reckless indifference to Plaintiffs' rights under the NYCHRL;

    o.  awarding Plaintiffs and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA, the NYLL, Executive Law, NYCHRL, and Equal Pay Act; and

      p.     awarding such other and further relief as the Court deems just and

proper.

Dated:    New York, New York
          June 30, 2017

                        PECHMAN LAW GROUP PLLC

                      By:

                      Louis Pechman
                      Laura Rodriguez
                      488 Madison Avenue - 11th Floor
                      New York, New York 10022
                      (212) 583-9500
                      pechman@pechmanlaw.com
                      rodriguez@pechmanlaw.com
                      *Attorneys for Plaintiffs and the FLSA Collective*