UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 17-CV-3942 (RER)

PAMELLA CORTES, LETICIA GONZALES, AND ARIANA REYES,

Plaintiffs,

VERSUS

JUQUILA MEXICAN CUISINE CORP., TEOFILA MENDEZ, AND CRISTOBAL BONILLA,

Defendants.

**Memorandum & Order**

March 29, 2021

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Pamella Cortes ("Cortes"), Leticia Gonzales ("Gonzales"), and Ariana Reyes ("Reyes") (collectively, "Plaintiffs") filed this suit against Juquila Mexican Cuisines Corp. ("Juquila"), Teofila Mendez ("Mendez"), and Cristobal Bonilla ("Bonilla") claiming multiple violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL") § 190 *et seq*; the New York Executive Law; the New York City Human Rights Law; and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq*. (Dkt. No. 1).

The Court held an inquest as to Juquila's liability on August 5–6, 2019. (Min. Entries dated 8/5/19 and 8/6/19). Following the inquest, the Court found that Juquila violated the FLSA and NYLL overtime provisions and awarded damages for unpaid wages, Equal Pay Act damages, and liquidated and statutory damages, plus post-judgment interest. (Dkt. No. 87). Plaintiffs subsequently filed a motion for attorney's fees and costs, (Dkt. No. 89), and later a motion to amend/supplement/correct the affidavit in support of that motion, (Dkt. No. 92). For the reasons discussed herein, Plaintiffs' motion to amend is granted and their motion for attorney's fees is granted in part.

### DISCUSSION

#### I. Attorney's Fees

The FLSA and NYLL allow prevailing employees to collect reasonable attorney's fees. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). Plaintiffs bear the burden of proving the reasonableness and the necessity of the hours spent and the rates charged. *Fermin v. Las Delicias Peruanas Rest., Inc.*,

1

93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015). A district court has broad discretion to determine the reasonable amount of attorney's fees to be awarded. *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 183, 190 (2d Cir. 2008); *Torres v. 894 Dekalb Pizza Corp.*, No. 19-CV-5750 (AMD) (SMG), 2020 WL 8768258, at *9 (E.D.N.Y. Dec. 28, 2020), *R & R adopted by* 2021 WL 848849 (Mar. 5, 2021).

In this Circuit, courts calculate the presumptively reasonable attorney's fees as the product of a reasonable hourly rate and hours reasonably expended on the litigation. *See Arbor Hill*, 522 F.3d at 190. As part of this analysis, courts consider case-specific variables ("the *Johnson* factors"), including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). These factors are "important tools" that help district courts identify the reasonable fees. *Lilly v. City of New York*, 934 F.3d 222, 233 (2d Cir. 2019).

Plaintiffs' submissions reflect $116,060 in attorney's fees for a total of 288.7 hours of work completed by three attorneys and one law clerk. (Pls.' Mem. at 16–17). To support their request, Plaintiffs submit the declaration of attorney Louis Pechman ("Pechman"). (Dkt. No. 91 ("Pechman Decl.")). Consistent with the Court's jurisprudence, Plaintiffs also submit contemporaneous billing records displaying the date, timekeeper, description of the activity, and total hours worked on that activity by the tenth of an hour. (Dkt. No. 91-1); *see N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The billing records calculate total fees as the product of the hours that each attorney or law clerk worked and the rates requested. (*See* Dkt. No. 91-1). Attorney travel time was appropriately reduced to half of their regular rates. (*See id.*); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 302 (E.D.N.Y. 2012) (collecting cases).

A. Reasonable Hourly Rate

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (citing *Arbor Hill*, 522 F.3d at 190). In this Circuit, courts generally use the prevailing hourly rates in the district in which they sit. *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *15 (E.D.N.Y. Mar. 18, 2016) (citing *Arbor Hill*, 522 F.3d at 191), *R & R adopted by* 2016 WL 2758272 (May 12, 2016). It may be appropriate to rely on rates from another district "where the special expertise of non-local counsel was essential to the case, [or] it was clearly shown that local counsel was unwilling to take the case, or other special circumstances." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 211 (2d Cir. 2005) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of*

2

*Albany*, 369 F.3d 91, 96 (2d Cir. 2004) (per curiam)); *see also Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).

"Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *R & R adopted by* 2020 WL 5259056 (Sept. 3, 2020). Plaintiffs request $100 per hour for work completed by law clerk Maribel Lopez ("Lopez"). She provided administrative and paralegal support for this matter. (Pechman Decl. ¶ 54; Pls.' Mem. at 7). Accordingly, the requested rate for Lopez's contributions is reasonable. *See LG Cap. Funding, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-2752 (KAM) (JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019) (collecting cases) ("In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals.").

Plaintiffs request $600 per hour for Pechman and $400 per hour for attorneys Laura Rodriguez ("Rodriguez") and Lillian M. Marquez ("Marquez"). (Pls.' Mem. at 7). These rates are above those typically awarded in wage and hour cases in this District. *See, e.g.*, *Martinez*, 2020 WL 5260579, at *8. Plaintiffs assert three primary arguments in support of these rates: (1) the rates are commensurate with counsel's significant experience; (2) the rates are consistent with what employers who retain Pechman Law Group PLLC ("PLG") regularly pay and with market rates in New York City; and (3) the court-developed distinction between appropriate attorney's fees in wage-and-hour cases and other civil rights litigation should be abandoned. (Pls.' Mem. at 4–16). Plaintiffs also argue that the requested fees are appropriate under the remaining *Johnson* factors, namely time and labor required to litigate the matter, including due to repeated delays by Defendants, and the degree of success obtained. (Pls.' Mem. at 13–14). After carefully considering each of these arguments, and for the reasons that follow, I find it appropriate to reduce the requested hourly rates to $500 for Pechman, $325 for lead counsel Rodriguez, and $300 for Marquez.

### i.   Qualifications of PLG Attorneys

PLG represents employees and management in a range of employment law issues, including wage and hour claims. (Pechman Decl. ¶¶ 4, 34, 47). The firm has been recognized as "A-V rated by Martindale-Hubbell" and has been selected by Best Lawyers as a 2017 "Tier 1" New York City law firm in the area of "Employment Law – Individuals" as well as "Labor Law – Management." (*Id.* ¶ 50).

The Court acknowledges Pechman's significant and specialized experience, as well as his reputation in this District. Pechman graduated from Fordham Law School in 1983. (Pechman Decl. ¶ 46). He has focused his practice on labor and employment law throughout his career.[1] (*Id.*). In recent years, as a partner at PLG, Pechman has handled over 300 cases involving FLSA and NYLL claims. (*Id.* ¶ 48). He provides a detailed description of his accomplishments and recognition by his peers. (*Id.* ¶¶ 48–50).

---

[1] Before founding PLG in January 2015, Pechman worked as an attorney for Skadden, Arps, Slate, Meagher & Flom LLP; Vladeck, Waldman, Elias & Engelhard, P.C.; the Daily News; and Lambos & Giardino / Lambos & Junge. He was a partner at BerkeWeiss & Pechman LLP from 1996 through 2014. (Pechman Decl. ¶ 46).

3

His qualifications merit an award slightly above the rates currently awarded in this District.

Rodriguez was the primary associate attorney on this matter. (Pls.' Mem. at 7; Pechman Decl. ¶¶ 38, 52). She graduated from Fordham University School of Law in May 2013. (*Id.*). She has been involved in over one hundred wage-and-hour cases in which she has represented both employees and management. (*Id.*). She is a native Spanish speaker, the primary language of Plaintiffs. (*Id.*). Rodriguez was selected for "the Best Lawyers: Ones to Watch and Super Lawyers: New York Metro Rising Stars lists for 2020." (*Id.*). She is also an Adjunct Professor at Fordham University School of Law where she jointly teaches with Pechman a course called "Wage Theft: Employee Rights and Employer Responsibilities." (*Id.*). Her qualifications merit an award at the higher end of the range in this District.

Marquez graduated from the George Washington University Law School in May 2011. (Pechman Decl. ¶ 53). She joined PLG as an associate attorney from September 2016 through August 2019 after five years of federal clerkship experience. (*Id.*). Marquez is fluent in Spanish. (*Id.*). Plaintiffs do not describe any other specialized experience or recognition.

    *ii.    Consistent with Market Rates in New York City, PLG Clients Actually Pay the Requested Rates*

The Second Circuit has held that reliance on hourly rates set in prior case law "may be proper in the absence of any credible evidence by the fee applicant of a higher prevailing market rate." *Farbotko*, 433 F.3d at 210. Plaintiffs submit additional evidence for the Court's consideration, including federal and state orders in which courts awarded higher hourly rates and the 2018 Real Rate Report by Wolters Kluwer ("Real Rate Report").

Pechman asserts that "[s]ince 2013, my hourly rate has been $600" and that "[o]ver 300 of my clients have paid" that rate. (Pechman Decl. ¶ 51). Similarly, each of Rodriguez's and Marquez's hourly rates for all clients was $400. (*Id.* ¶¶ 52–53). Plaintiffs argue that "[t]here is no basis to rely on a fictional market rate when counsel has a well-established hourly rate, paid by hundreds of individuals, executives, and companies." (Pls.' Mem. at 10).

"Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates" for similarly experienced counsel in similar matters. *Tatum v. City of New York*, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010). Moreover, when agreeing to pay a particular hourly rate, the considerations of management defending against FLSA and NYLL claims differ from those of employees bringing the claims. *Cf. K.F. v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011), *adhered to as amended*, 2011 WL 4684361 (Oct. 5, 2011) ("The significance of a client agreed-upon rate . . . (as the product of an arms-length negotiation) takes on less significance when the client knows it will never pay that amount. Nevertheless, [the attorney's] willingness to take the case on a contingency fee basis is also a factor weighing in his firm's favor."); *Cleanup N. Brooklyn v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 403 (E.D.N.Y. 2019) ("[I]n cases involving *pro bono* representation, courts look to the amounts usually charged by attorneys handling similar matters, as opposed to rates that firms are 'accustomed to handling for large, fee-paying clients.'"

4

(quoting *Cho v. Koam Med. Servs. P.C.*, 524 F.Supp.2d 202, 207 (E.D.N.Y. 2007)))).

While recognizing his significant experience and accolades "courts in this City have repeatedly reduced Pechman's hourly rate to $500 or even lower." *Hernandez v. Boucherie LLC*, No. 18 Civ. 7887 (VEC), 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019) (collecting cases) (reducing Pechman's hourly rate to "a very generous" $500); *see also, e.g.*, *Sajvin v. Singh Farm Corp.*, No. 17-CV-04032 (AMD) (RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour), *R & R adopted by* WL 4211300 (E.D.N.Y. Sept. 4, 2018); *Eren v. Gulluoglu, LLC*, No. 15-CV-4083 (DLI) (RER) (E.D.N.Y. Aug. 28, 2018) (same). Similarly, associates from PLG are consistently awarded within the typical range for this District and not more. *See e.g.*, *Sajvin*, 2018 WL 4214335, at *9 (awarding an hourly rate of $250 for an associate with approximately five years of experience and $175 per hour for a junior associate); *Salazar v. 203 Lena Inc.*, No. 16 Civ. 7743 (VB) (JLC), 2020 WL 5627118, at *12 (S.D.N.Y. Sept. 18, 2020) (reducing Rodriguez's hourly rate to $250), *R & R adopted by* 2020 WL 6257158 (Oct. 23, 2020); *Hernandez*, 2019 WL 3765750, at *5 (reducing Marquez's hourly rate to "a generous $300."); *Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666 (CBA) (RML), 2017 WL 3701687, at *7 (E.D.N.Y. May 31, 2017) (awarding Marquez $250 per hour), *R & R adopted by* 2017 WL 3701479 (Aug. 25, 2017).[2] I agree with the reasoning of these courts.

Plaintiffs cite to cases from only the Southern District of New York ("SDNY") in which courts awarded PLG's requested rates. (Pls.' Mem. at 4–5 (first citing *Espinosa v. Perez*, No. 18 Civ. 8855, 2020 U.S. Dist. LEXIS 14075, at *11 (S.D.N.Y. Jan. 27, 2020), *R & R adopted by* 2020 U.S. Dist. LEXIS 40829 (Mar. 9, 2020); and then citing *Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532 (LJL), 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020)). A purely geographic analysis of reasonable hourly rates "ignores the practical reality of practicing law in New York [City]." *Gutman v. Klein*, No. 03-CV-1570 (BMC) (RML), 2009 WL 3296072, at *2 n. 1 (E.D.N.Y. Oct. 13, 2009); s*ee also Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *27 n.28 (E.D.N.Y. Apr. 30, 2012). However, it remains that "rates in the [SDNY] are higher than the rates in this District." *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (citing *Simmons*, 575 F.3d at 177). Accordingly, fees that clients have been willing to pay PLG for its representation in the SDNY do not counsel in favor of awarding higher rates than courts in this District have consistently awarded.

Plaintiffs also argue that, according to the Real Rate Report, the mean "real rate" charged by labor and employment attorneys in New York City is consistent with Plaintiffs' request. (Pls.' Mem. at 6). According to that report, the mean real rate in 2018 for partners and associates working in labor and employment law in New York City

---

[2] Plaintiffs attempt to distinguish some of the case law reducing their requested rates. They argue that courts failed to consider that paying clients regularly paid PLG for its legal services and expertise at the requested rates. (Pls.' Mem. at 4 (first citing *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *11 (S.D.N.Y. Mar. 27, 2017); and then citing *Velandia v. Serendipity 3, Inc.*, No. 16 Civ. 1799 (AJN), 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018))). In *Manley*, however, the Court noted that while "the firm's clients *regularly* accept and pay the requested hourly rates . . . counsel does not cite any cases awarding [PLG or Pechman] the hourly rates requested here." 2017 WL 1155916, at *11 (emphasis added). The court in *Velandia* reduced the requested hourly rates as part of its "cross check" of the settlement. 2018 WL 3418776, at *4.

was $682 per hour and $473 per hour, respectively. (*Id.*). "[A]lthough not dispositive, the Court may rely on survey evidence as a cross-check on any fee award to ensure that it is reasonable." *Espinosa*, 2020 U.S. Dist. LEXIS 14075, at *10–11 (awarding Pechman an hourly rate of $600 and Marquez an hourly rate of $375 after cross checking those rates against the 2018 Real Rate Report); *see also Augusto Corrales v. AJMM Trucking Corp.*, No. 19 Civ. 4532 (LJL), 2020 WL 1911189, at *4 (S.D.N.Y. Apr. 20, 2020) (awarding Pechman's $600 hourly rate and $225 per hour for junior associates). However, the helpfulness of the Real Rate Report is less than certain.

> The report's methodology is opaque; it claims to be based on "the actual hours and fees law firm personnel billed" from 2007–2011 but does not explain whether its sample is representative of the New York market as a whole—i.e., whether its sample is skewed toward litigation partners working for large corporate law firms—or how it normalizes the data. . . . Finally, in capturing data from 2007–2011, the report reflects historic rates more than current rates.

*Hicks v. Vane Line Bunkering, Inc.*, No. 11 Civ. 8158 (KBF), 2013 WL 1747806, at *9 (S.D.N.Y. Apr. 16, 2013) (referring to the 2012 Real Rate Report), *aff'd sub nom. Hicks v. Tug PATRIOT*, 783 F.3d 939 (2d Cir. 2015). The Real Rate Report is insufficient to meet Plaintiffs' burden to demonstrate that the requested rates conform to market rates for similar services—representation of employees in wage-and-hour litigation—in this District.

### iii. Distinction between Attorney's Fees in Wage-and-Hour Cases and Other Civil Rights Litigation

Plaintiffs argue that the court-developed distinction between wage-and-hour matters and discrimination/civil rights cases "has no basis in law and should not continue to be drawn." (Pls.' Mem. at 12). Regarding "discrimination/civil rights cases," Plaintiffs compare rates awarded for civil rights litigation in the SDNY to rates awarded for FLSA litigation in the SDNY and this District. But the regular rates within this District are not significantly different. C*ompare Torcivia*, 437 F. Supp. 3d at 252 (collecting cases) (civil rights), *with Martinez*, 2020 WL 5260579, at *8 (FLSA). In this District, hourly rates for civil rights litigation currently range from $300–$450 per hour for partners and $100–$325 per hour for associates. *Torcivia*, 437 F. Supp. 3d at 252 (collecting cases). Moreover, "[t]he highest rates . . . are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Hugee*, 852 F. Supp. 2d at 299 (citing *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010)). Hourly rates of $500 for Pechman, $325 for Rodriguez, and $300 for Marquez are comparable to fees granted in this District to civil right attorneys with similar experience.

As to fees awarded in "civil rights and employment law cases," Plaintiffs first cite to a case in which the Court reviewed the settlement agreement for fairness. *Ebbert v. Nassau Cnty.*, No. 05-CV-5445 (AKT), 2011 WL 6826121, at *16 (E.D.N.Y. Dec. 22, 2011) ("Although the Defendants have proffered no objection to the proposed hourly rates, the Court believes they are at the very high end of what courts in the Eastern District of New York typically awarded in complex

6

cases."). In that context, the Court is still required to assess the reasonableness of the fees negotiated under settlement agreements; however, the Court's "fiduciary role in overseeing the award is greatly reduced." *Id.* at *14. Moreover, an hourly rate of $500 for Pechman, $325 for Rodriguez, and $300 for Marquez fall squarely within the range that the courts to which Plaintiffs cite have identified. *See id.* at *16 (acknowledging that "courts have approved, in class actions where the defendants have agreed to pay the specific attorneys' fees, a lodestar based on billable rates of between $405 and $790 for partners and $270 to $500 for associates."); *Vilkhu v. City of New York*, No. 06-CV-2095 (CPS)(JO), 2009 WL 1851019, at *5 (E.D.N.Y. June 26, 2009) (awarding hourly ranges ranging from $400 to $525 for partners), *rev'd on other grounds*, 372 Fed. App'x. 222 (2d Cir. 2010).[3]

B. <u>Reasonable Hours Expended</u>

The Court must next examine the contemporaneous time records and assess the reasonableness of the hours expended based on its experience, knowledge of the case, and the evidence and arguments presented. *See Hugee*, 852 F. Supp. 2d at 302–03. "The goal is 'to do rough justice, not to achieve auditing perfection.'" *Gleason v. Scoppetta*, No. 12-CV-4123 (RJD) (RLM), 2015 U.S. Dist. LEXIS 178305, at *22 (E.D.N.Y. Dec. 30, 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 837 (2011)), *R & R adopted in relevant part by* 2016 U.S. Dist. LEXIS 72753 (June 3, 2016).

When a plaintiff's billing record is excessive, it is within the court's discretion to reduce the fees requested. *See Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-02520 (FB) (ST), 2018 WL 4782342, at *10 (E.D.N.Y. Sept. 17, 2018), *R & R adopted by* 2018 WL 4783964 (Oct. 3, 2018). The Court may also reduce the requested hours to adjust for attorney time billed for clerical or administrative tasks. *Torcivia*, 437 F. Supp. 3d at 253 (citing *Lilly*, 934 F.3d at 234); *see also Salazar*, 2020 WL 5627118, at *13 (recommending thirty percent reduction of Pechman, Marquez, and Rodriguez's hours). Further, "[w]here an attorney repeatedly bills 0.10 hours for 'discrete tasks,' but, when taken together, it appears likely those tasks 'occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate.'" *Salazar*, 2020 WL 5627118, at *13 (quoting *Hernandez*, 2019 WL 3765750, at *6).

Plaintiffs' counsel already reduced the hours expended to omit hours they understood to be excessive, redundant, or otherwise unnecessary. (Pls.' Mem. at 15; Pechman Decl. ¶¶ 6, 37). For example, they excluded some discussions regarding litigation strategies and the status of the case. (Pechman Decl. ¶ 42). Considering the three years that PLG spent litigating this matter, including failed settlement negotiations, depositions, and a two-day inquest, the hours expended are reasonable. *Espinosa*, 2020 U.S. Dist. LEXIS 14075 (finding 195.2 hours reasonably expended by PLG in a case litigated for two years, including a one-day bench trial). Accordingly, Plaintiffs are

---

[3] Plaintiffs' reliance on *Kovach v. City Univ. of N.Y.*, No. 13 Civ. 7198 (LGS), 2015 WL 3540798, at *2–3 (S.D.N.Y. June 4, 2015); *KGK Jewelry LLC v. ESDNetwork*, No. 11 Civ. 9236 (LTS), 2015 WL 2129703, at *4 (S.D.N.Y. May 6, 2015); *Torres v. Gristede's Operating Corp.*, No. 4 Civ. 3316 (PAC), 2012 WL 3878814, at *4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 Fed. App'x. 1 (2d Cir. 2013); and *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544–46 (S.D.N.Y. 2008) is inapposite. (*See* Pls.' Mem. at 13). As discussed *supra*, rates in the SDNY are generally higher than those awarded in this District. *Torcivia*, 437 F. Supp. 3d at 252.

7

awarded attorney's fees in the total amount of $93,330.[4]

## II. Costs

The FLSA and NYLL allow prevailing employees to collect reasonable litigation costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). This includes "[t]he costs of depositions . . . where they appear to have been reasonably necessary to the litigation at the time they were taken." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544 (KAM) (GRB), 2020 WL 5665065, at *32 (E.D.N.Y. Sept. 23, 2020); *see also* Local Civ. R. 54.1(c). Plaintiffs must submit receipts, invoices, or other evidence to support the costs requested. *E.g.*, *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB) (SJB), 2019 WL 1130729, at *9 (E.D.N.Y. Feb. 11, 2019), *R & R adopted by* 2019 WL 1128356 (Mar. 12, 2019); *J & J Sports Prods., Inc. v. Perez*, No. 06-CV-480 (JG) (SMG), 2008 U.S. Dist. LEXIS 118445, at *5 (E.D.N.Y. Mar. 5, 2008), *R & R adopted by* 2008 U.S. Dist. LEXIS 25321 (Mar. 31, 2008).

Plaintiffs seek to recover $4,643.86 in filing fees, depositions, service of process, translation services, and inquest materials.[5] (Dkt No. 92). In support of this request, Plaintiffs submitted a motion to amend/correct/supplement Pechman's affidavit and attached six exhibits containing receipts and invoices.[6] (Dkt. No. 92). Plaintiffs' receipts and invoices support the costs requested. (Dkt. Nos. 92-1 through 92-6). Accordingly, Plaintiffs are awarded reasonable costs in the amount of $4,643.86.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for attorney's fees is granted to the extent that they are awarded attorney's fees in the amount of $93,330, and costs in the amount of $4,643.86.

SO ORDERED

/s/ Ramon E. Reyes, Jr.
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 29, 2021
Brooklyn, NY

---

[4] Pechman: $500 X 8.6 = $4,300; Rodriguez: $325 X 230.4 = $74,880; Marquez: $300 X 45.9 = $13,770; Lopez: $100 X 3.8 = $380.

[5] The Court acknowledges that Plaintiffs do not request reimbursement for all costs that its counsel incurred litigating this matter, including costs for photocopying, printing, and postage. (Pechman Decl. ¶ 64).

[6] The motion to amend/correct/supplement and attached exhibits were served on Juquila, Mendez, and Bonilla via U.S. Postal Service on March 4, 2021. (Dkt. No. 94). Juquila has not objected to the motion, and it is within the Court's discretion to grant it. Accordingly, Plaintiffs' motion to amend/correct/supplement is granted.

8