# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------

№ 17-CV-3942 (RER)

------------------

PAMELLA CORTES, LETICIA GONZALEZ, AND ARIANA REYES,
*on behalf of themselves and all others similarly situated*

Plaintiffs,

VERSUS

JUQUILA MEXICAN CUISINE CORP. D/B/A/ JUQUILA MEXICAN CUISINE,
JUQUILA KITCHEN AND BAR CORP. D/B/A/ JUQUILA KITCHEN & BAR;
TEOFILA MENDEZ, AND CRISTOBAL BONILLA,

Defendants,

AND

SANTA CATARINA, INC.,

Respondent.

------------------

**MEMORANDUM AND ORDER**

March 31, 2022

------------------

**RAMON E. REYES, JR., U.S.M.J.:**

On April 5, 2021, this Court entered final judgment awarding damages, attorneys' fees, costs, and post-judgment interest (the "Judgment") in favor of Plaintiffs Pamella Cortes, Leticia Gonzalez, Ariana Reyes, Lucia Isabel Rivera Estrada, and Blanca Nelly Ayala (collectively, "Plaintiffs" or "Judgment Creditors") against their former employer, Juquila Mexican Cuisine Corp. ("Juquila" or "Judgment Debtor"). (ECF No. 96). On November 19, 2021, Plaintiffs served an information subpoena and restraining notice upon non-party respondent Santa Catarina, Inc.

1

("Santa Catarina" or "Respondent") seeking post-judgment discovery regarding Juquila's assets (ECF Nos. 99, 102; *see also* ECF No. 108-1 ("Subpoena and Restraining Notice")), and now move pursuant to Rule 69 of the Federal Rules of Civil Procedure to enforce the Judgment against Santa Catarina as Juquila's fraudulent transferee and garnishee (ECF No. 100 ("Turnover Mot.")). Santa Catarina, in turn, opposes the motion and cross-moves to quash the information subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure, or alternatively seeks a protective order vacating the subpoena pursuant to Rule 26 of the Federal Rules of Civil Procedure. (ECF No. 107).

After carefully reviewing the record, and for the reasons set forth herein, Plaintiffs' motion for a turnover order is granted to the extent that the Court finds it has jurisdiction to preside over these proceedings and has personal jurisdiction over Respondent, but is otherwise denied at this time. Respondent's cross-motion to quash the information subpoena is denied in its entirety.

## BACKGROUND

Although the Court assumes familiarity with the facts underlying Defendants' liability and Plaintiffs' damages, details regarding the procedural history of the action and relevant facts are provided as context for the fraudulent activities Plaintiffs allege were undertaken by Defendants and by the Respondent during the pendency of these proceedings.

Plaintiffs commenced this action on June 30, 2017. (ECF No. 1 ("Compl.")). After nearly a year of proceedings and the completion of discovery, the parties informed the Court that they reached a settlement in principle on August 1, 2018. (*See* ECF Nos. 28, 30; Order dated 06/20/2018). Later that month, however, Juquila filed for Chapter 11 bankruptcy. (*See* Bankr. E.D.N.Y. 1:18-44976 (NHL), ECF No. 1, Voluntary Petition for Non-Individuals Filing for Bankruptcy dated 8/29/2018). As a result of the bankruptcy, Defendants' counsel informed the Court that Juquila could not commit to a settlement because any offer would need to be approved

2

by the bankruptcy court and by the restaurant's other creditors. (ECF No. 39). The parties nevertheless continued to negotiate a settlement with individual defendants Cristobal Bonilla and Teofila Mendez—the husband and wife team that owned and operated Juquila—and contemplated settling with Juquila as a debtor in possession beginning in November 2018 and through early 2019. (ECF Nos. 44, 48, 49, 50, 51).

During those settlement negotiations, the parties consented to my jurisdiction. (ECF No. 47). While those negotiations were taking place, Mr. Bonilla's and Ms. Mendez's son, Darion Mendez ("Darion"), incorporated Santa Catarina, Inc. under the laws of the State of New York on January 3, 2019. (ECF No. 101-3 ("Cert. of Inc.") at 5). The address provided in the certificate of incorporation is the site of Juquila's restaurant, 40–12 83rd Street, Elmhurst, N.Y. 11373, which was still operating at the time. (*Id*. at 4).

Less than two weeks later, on January 15, 2019, Mr. Bonilla informed Juquila's bankruptcy counsel that he intended to close down the restaurant. (ECF No. 52). As a result, Juquila filed a motion to dismiss the chapter 11 case. (Bankr. E.D.N.Y. 1:18-44976 (NHL), ECF No. 36 ("Bankr. Mot. to Dismiss")). In the motion, Juquila explained that after months of declining profitability, it could no longer effectively reorganize or continue to operate. (*Id*. at 5). Juquila further explained that it owed $48,000 in rent arrears, which, along with more than $35,000 in administrative claims, took priority over the then-disputed, unsecured claims that formed the basis for this litigation. (*Id*. at 4–5.). According to the motion:

> [Juquila's] administrative claim and the amount due for rental arrears exceed[ed] the value of its assets. The Debtor's only assets [we]re its bank accounts, security deposits, supplies, kitchen equipment and restaurant furnishings. The Debtor valued its assets at approximately $89,000 in its Schedule B, but it suspects that the assets would bring substantially less than that amount if they were liquidated.

(*Id*. at 5).

3

On February 18, 2019, while Juquila's motion to dismiss its Chapter 11 case was pending, Mr. Bonilla agreed to terminate the restaurant's lease—which was originally set to expire in September 2024—and surrendered the property to his landlord, Jose Aguera (the "Landlord"). (ECF No. 101-1 at 8; ECF No. 66 at 7).[1] According to the terms of the termination agreement, Mr. Bonilla surrendered the lease to the Landlord "as is," to satisfy Juquila's outstanding debt of $83,210.54 in unpaid rent and utility bills. (ECF No. 101-1 at 8; ECF No. 66 at 7). Although the "Restaurant Premises, Equipment & tools [were] not enough to cover even 30%" of that outstanding debt,[2] the Landlord and Mr. Bonilla agreed that "the termination of the lease and surrender of leased premises is at the end the best decision." (*Id.*).

In bankruptcy filings, Mr. Bonilla explained that he was forced to close Juquila after Ms. Mendez terminated their marriage and left their joint business along with half of their staff. (Bankr. E.D.N.Y. 1:18-44976 (NHL) ECF No. 41 ¶ 1). Soon after that, Mr. Bonilla "closed the doors and returned the keys to the Landlord," and "[s]ince *virtually all of the contents belonged to the Landlord*, and [Juquila] owed him a significant amount of rent, [Mr. Bonilla] thought this was the proper thing to do." (*Id.*) (emphasis added). The Landlord's counsel similarly informed the bankruptcy court shortly after the termination of the lease that, based on representations made by Mr. Bonilla through Juquila's bankruptcy counsel, and based on representations made by the Landlord himself, "that *all of the contents of the restaurant, except for two small used refrigerators, were in the premises when [Juquila] leased the space and the contents belonged to the Landlord*," and that "[w]hen [Juquila] vacated the premises, he returned the premises and its

---

[1] Mr. Aguera served as landlord to the commercial enterprise Juquila and continues to serve as Mr. Bonilla's residential landlord—Mr. Bonilla still lives in an apartment above the restaurant. (Pl's Mem. at 8; *see also* Minute Entry dated 06/03/2019 ("Bonilla provided the Court with his new address 40-16 83rd Street, Apt. 3, Elmhurst, NY 11373[.]"); ECF No. 60 ("Notice of Change of Address")).

[2] In other words, the surrender agreement contemplated that the restaurant premises, equipment, and tools belonged to Juquila and were valued at some amount short of $24,963.16.

contents to the Landlord." (Bankr. E.D.N.Y. 1:18-44976 (NHL) ECF No. 40 ¶ 2) (emphasis added).

Around this time, in February 2019, "Santa Catarina Inc. *[doing business as] Juquila*" applied for a New York State liquor license. (ECF No. 101-4 at 3) (emphasis added). In March 2019, Dr. Sevilla Vilar and Darion entered into an oral agreement to share ownership of Santa Catarina, with respective 90% and 10% interests. (ECF No. 110 ("Darion Mendez Decl.") ¶ 5; ECF No. 109 ("Vilar Decl.") ¶ 5)). On March 7, 2019, less than three weeks after Mr. Bonilla surrendered the restaurant, Dr. Vilar and Darion signed an agreement with the Landlord on behalf of Santa Catarina to rent the restaurant space "as is." (ECF No. 108-2 at 1, 8, 11). The lease provided for a seven year term at a base monthly rate of $11,000 for the first year, with 3% increases each year thereafter. (*Id*. at 10). The same day that the Landlord and Santa Catarina executed the new lease, the bankruptcy case against Juquila was dismissed. (Bankr. E.D.N.Y. 1:18-44976 (NHL) ECF No. 43).

On March 15, 2019, Plaintiffs informed the Court of their understanding that the restaurant had closed down, that Mr. Bonilla intended to file for personal bankruptcy, and that Ms. Mendez's whereabouts were unknown. (ECF No. 54). Darion and Dr. Vilar report that at that time, they had already begun operating the restaurant, and that Ms. Mendez was working there as a part-time employee assisting with food deliveries. (Darion Mendez Decl. ¶¶ 8–9; Vilar Decl. ¶¶ 8–9).[3]

By May 3, 2019, Plaintiffs learned that Juquila had reopened, and believed the restaurant to be under the same ownership and operation as before. (ECF No. 56 at 1). At that point, Mr. Bonilla denied having any interest in the re-opened restaurant; nevertheless, Plaintiffs explained in a letter to the Court that they believed that the corporate successor operating Juquila restaurant would be

---

[3] Ms. Mendez's personal bankruptcy filings indicate that she had been working not as a delivery person, but as a cashier for Santa Catarina "since March 2019." (Bankr. E.D.N.Y. No. 19-43521-ESS, ECF No. 9 at 13).

liable for Plaintiffs' claims. (*Id.* at 1). After learning of Ms. Mendez's personal bankruptcy filing,[4] and of the dissolution of Juquila, Plaintiffs requested a stay of the proceedings in June 2019 to give them time to "investigate and consider the option of identifying and naming, as a Defendant, the successor corporation that currently owns and operates Juquila Mexican Cuisine." (ECF No. 61).

In July 2019, Plaintiffs confirmed their understanding that Juquila Restaurant was taken over by Santa Catarina, and alleged that Juquila fraudulently transferred the restaurant to Santa Catarina for no remuneration. (ECF No. 65). Plaintiffs simultaneously notified the Court that they intended to pursue a default judgment inquest against Juquila, and to move to reverse the conveyance or enforce the judgment against Santa Catarina. (*Id.*). At a telephone conference held July 19, 2019, Plaintiffs' counsel reiterated their belief that fraudulent activity was afoot, and that they would seek to reverse the conveyance or introduce Santa Catarina as a party in this matter. (*See* Minute Entry dated 7/19/2019; 7/19/2019 FTR Log #12:16:00–12:16:46). Through his bankruptcy counsel, who appeared only as a courtesy on his behalf in this litigation, Mr. Bonilla disputed the notion that there was any fraudulent conveyance, noting that he had no interest in Santa Catarina and that no shares of Juquila were ever transferred. (*See* 7/19/2019 FTR Log #12:16:54–12:17:25).

Following the conference, on July 25, 2019, Mr. Bonilla sent a letter to the Court along with supporting documentation, confirming that he had filed for personal bankruptcy,[5] dissolved Juquila,[6] surrendered Juquila's liquor license, lease, and certificate of authority, and finalized

---

[4] *See* ECF No. 1, Chapter 7 Voluntary Petition, *In re Mendez-Luna*, No. 1:19-43521-ESS (Bankr. E.D.N.Y. June 6, 2019).

[5] *See* ECF No. 1, Chapter 7 Voluntary Petition, *In re Bonilla*, No. 1:19-43380 (NHL) (Bankr. E.D.N.Y. May 31, 2019).

[6] Mr. Bonilla mailed an executed certificate of dissolution to the New York State Department of State on June 7, 2019. (ECF No. 101-1 at 5–6). However, the Court's review of public records indicates that Juquila Mexican Cuisine Corp. remains active, and that the certificate of dissolution was not formally filed by the Department of State. *See* New York Dep't of State Division of Corporations Entity Filing History, https://apps.dos.ny.gov/publicInquiry/FilingHistory (last visited Mar. 22, 2022). The Court notes that although Mr. Bonilla sent a letter from his accountants indicating that his business was discontinued as of February 28, 2019, and surrendered his certificate of authority indicating that

6

Juquila's quarterly sales tax reporting obligations. (ECF No. 66). He affirmed in the letter that he "never transferred any assets to any persons" and disputed Plaintiffs' fraudulent conveyance claims. (*Id.*). Finally, he noted in his letter that he was unable to obtain counsel to appear on Juquila's behalf in these proceedings. (*Id.*).

On August 2, 2019, the Court directed the Clerk of the Court to enter a notation of default against Juquila because it would not be represented by counsel and, as a corporation, could not proceed *pro se*. (Order dated 08/02/2019). The Clerk of the Court subsequently entered default on August 5, 2019. (ECF No. 68). The Court conducted an inquest hearing in August 2019, and on July 30, 2020 awarded Plaintiffs damages against Juquila. (ECF No. 87).[7] On April 5, 2021, the Court entered final judgment in Plaintiffs' favor against Juquila, awarding damages, attorneys' fees, costs, and post-judgment interest. (ECF No. 96). Defendant has failed to pay any part of the Judgment. (ECF No. 101 ("Pl's Mem.") at 2).

On November 19, 2021, Plaintiffs served Santa Catarina with an information subpoena and restraining notice seeking post-judgment discovery regarding Juquila's assets. (ECF Nos. 99, 102; *see also* Subpoena and Restraining Notice). The restraining notice forbids Santa Catarina from selling or transferring any property in which Juquila has an interest. (Subpoena and Restraining Notice at 2–3). The information subpoena lists four questions seeking: (1) the identity of a deponent to respond to questions contained in the subpoena, (2) the identity of its stockholders, officers, and directors, (3) information regarding whether Respondent "has within its possession,

---

the business was "insolvent" and that its last date of business was February 16, 2019, Mr. Bonilla did not attach the consent of the New York State Department of Taxation and Finance or of the New York City Commissioner of Finance to his certificate of dissolution, as is required. (ECF No. 101-1 at 13).

[7] The Court's findings of fact and conclusions of law were limited to Juquila alone because of the automatic stay applicable to Ms. Mendez and Mr. Bonilla under the Bankruptcy Act, 11 U.S.C. § 362. (ECF No. 87 at 2).

custody, or control any property in which [Juquila] has or had an interest," and (4) an itemized list of any such property. (*Id.* at 4–5).

The day the information subpoena was served, Plaintiffs served the motion currently before the Court which seeks an order pursuant to Rule 69(a) requiring that Santa Catarina turn over any property that was fraudulently transferred to them from Juquila in order to enforce the Judgment. (Turnover Mot.). On December 20, 2021, Santa Catarina opposed Plaintiffs' motion and cross-moved to quash the information subpoena. (ECF Nos. 107, 111).

## **LEGAL STANDARDS**

### I.   Rule 69(a) and C.P.L.R. § 5225(b) Proceedings

"A motion to enforce a money judgment is governed by Rule 69(a), which provides that 'proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located.'" *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (quoting Fed. R. Civ. P. 69(a)). New York's law governing such proceedings provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(b) (emphasis added). In sum, "[t]his section 'enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor.'" *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG) (SMG), 2018 WL

6718680, at *2 (E.D.N.Y. Nov. 6, 2018) (quoting *State Farm Mut. Auto Ins. Co. v. Grafman*, 2015 WL 269529, at *2 (E.D.N.Y. Jan. 21, 2015), *adopted by* 2015 WL 9460131 (Dec. 23, 2015)).

Although New York law contemplates the commencement of a special proceeding, "[t]hat mechanism . . . has no equivalent under the Federal Rules of Civil Procedure, which 'recognize only "one form of action—the civil action."'" *Mitchell v. Garrison Prot. Servs., Inc.*, 819 F.3d 363, 640 (2d Cir. 2016) (quoting *Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015); Fed. R. Civ. P. 2). Nevertheless, the Second Circuit has held that "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp., Inc.*, 879 F.3d at 469.

"A motion under Rule 69(a) is treated like a summary judgment motion." *Axginc Corp. v. Plaza Automall, Ltd.*, No. 14-CV-4648 (ARR) (VMS), 2021 WL 1030228, at *7 (citing *Deflora Lake Dev. Assocs., Inc. v. Hyde Park*, No. 13 Civ. 4811 (CS), 2016 WL 7839191, at *2 (S.D.N.Y. June 9, 2016), *aff'd* 689 F. App'x 93, 99 (2d Cir. May 3, 2017)), *adopted by* 2021 WL 1026497 (Mar. 17, 2021); *see also Fabric Selection, Inc. v. A & T Trading US, Inc.*, No. 20 Misc. 864 (ARR) (VMS), 2021 WL 811371 at *3 (E.D.N.Y. Feb. 5, 2021), *adopted by* 2021 WL 810340 (Mar. 3, 2021). Accordingly, "[a] court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." *Axginc Corp.*, 2021 WL 1030228, at *7 (citing *CSX Transp., Inc.*, 879 F.3d at 473; *Matter of Empire Mut. Ins. Co. (Greaney)*, 156 A.D.2d 154, 156 (N.Y. App. Div. 1989)); *see also Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (PKC) (PK), 2018 WL 4921631, at *5 (E.D.N.Y. Sept. 4, 2018) ("In a turnover proceeding under Section 5225, 'a court is authorized to make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised.'")

(quoting *Centerpointe Corp. Park P'ship 350 v. MONY*, 946 N.Y.S.2d 354, 355 (N.Y. App. Div. 2012)).

"In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party," and must "construe[] any disputed facts in the light most favorable to the nonmoving party." *Emerson Elec. Co. v. Holmes*, No. 16-CV-1390 (PKC) (SIL), 2020 WL 4592808, at *6 (E.D.N.Y. Aug. 11, 2020) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970)). Judgment creditors seeking relief under Rule 69(a) are not entitled to demand a trial by jury to resolve disputed issues of fact, but non-party respondents are entitled to make such a demand. *See Axginc Corp.*, 2021 WL 1030228, at *7 (citing *Leedpak, Inc. v. Julian*, 78 Misc. 2d 519, 521 (N.Y. Sup. Ct. 1974); *Colonial Surety v. Lakeview Advisors, LLC*, 125 A.D.3d 1292, 1294 (N.Y. App. Div. 2015)).

To grant relief under Rule 69(a) and N.Y. C.P.L.R. § 5225, a Court must perform a two-step analysis to determine "whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor." *Beauvais v. Allegiance Securities, Inc.*, 942 F.2d 838, 840 (2d Cir. 1991); *see also CSX Transp.*, *Inc.*, 2016 WL 755630 at *4. To grant relief, it must first be shown that "the judgment debtor 'has an interest' in the property the creditor seeks to reach." *Beauvais*, 942 F.2d at 840 (quoting N.Y. C.P.L.R. § 5225(b)). Second, the court must find "either that the judgment debtor is 'entitled to the possession of such property,' *or* it must find that 'the judgment creditor's rights to the property are superior' to those of the party in possession of the property." *Id.* (quoting N.Y. C.P.L.R. § 5225(b)). "Only after both steps of the analysis are demonstrated may the trial court order the transferee to turn over the property to the judgment creditor." *Id.*

Some courts have held that even without a showing that the judgment debtor "has an interest" in the property in question, Section 5225(b) still permits recovery from "'a transferee of money or other personal property from the judgment debtor' if it can be demonstrated that the debtor is entitled to the property or that the creditor's interest is superior to that of the transferee." *Fed. Deposit Ins. Corp. v. Conte*, 204 A.D.2d 845, 846 (N.Y. App. Div. 1994) (quoting N.Y. C.P.L.R. § 5225(b)); *see also Axginc Corp.*, 2021 WL 1030228, at *10–11 (distinguishing between garnishee proceedings and transferee proceedings); *Aaron v. Mattikow*, 225 F.R.D. 407, 412 (E.D.N.Y. 2004) ("The proceedings authorized by C.P.L.R. § 5225(b) may be properly brought by a judgment creditor against a garnishee or a transferee.") (citations omitted). Put differently, Section 5225(b) "'furnishes a mechanism for obtaining a money judgment against the recipient of a fraudulent conveyance.'" *Axginc Corp.*, 2021 WL 1030228, at *11 (quoting *Conte*, 204 A.D. 2d at 846; citing *Mirvis*, 2018 WL 4921631, at *4; *Leser v. U.S. Bank Nat'l Ass'n*, No. 09 Civ. 2362 (KAM), 2013 WL 3788877, at *8 (E.D.N.Y. July 18, 2013)); *see also Mattikow*, 225 F.R.D. 407 at 412 (addressing fraudulent conveyance claims in a § 5225(b) proceeding without first finding judgment debtor's interest under *Beauvais*).

A fraudulent conveyance, in turn, may be made with actual or constructive intent to defraud. *See, e.g.*, *Mirvis*, 2018 WL 4921631, at *5–7. The applicable law governing constructively fraudulent conveyances provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. L. § 273-a.[8]

---

[8] As noted in Plaintiffs' brief, § 273-a remains applicable to the alleged transfers at issue here, which occurred before the repeal of § 273-a and the adoption of the Uniform Voidable Transactions Act became effective on April 4, 2020.

A plaintiff therefore states a claim for a constructively fraudulent conveyance under this section where it establishes "(1) that the conveyance was made without fair consideration; (2) that they conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 641 (2d Cir. 2016) (citations omitted). "Fair consideration" as described in the first element is a defined term under New York's Debtor and Creditor law, N.Y. Debt. & Cred. L. § 272,[9] and requires both "good faith and the payment of a fair equivalent value for the property interest conveyed." *Gortat*, 2018 WL 6718680, at *5 (citing *Allstate Ins. Co. v. Mirvis*, 2017 WL 3981157, at *4 (E.D.N.Y. July 31, 2017), *adopted by* 2017 WL 6029128 (Dec. 5, 2017). "Fair consideration is determined on a case-by-case basis." *Id.* (citing *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)).

The burden of proof under Section 273-a is unsettled. *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.,* No. 04-CV-4971 (NG) (MDG), 2011 WL 2414685, at *8 (E.D.N.Y. June 8, 2011) ("There is a dispute as to the appropriate standard of proof required to prove constructive fraud under § 273"); *Piccarreto v. Mura*, No. 12/11476, 2016 WL 3201863, at *3–4 (N.Y. Sup. Ct. June 6, 2016) (noting unresolved dispute in applicable burden of proof), *aff'd*, 158 A.D.3d 1095 (N.Y.

---

(Pl's Mem. at 3 n.1 (citing 2019 N.Y. Laws, ch. 580 § 7; *Varbero v. Belesis*, No. 20 Civ. 2538 (LJL), 2020 WL 5849516, at *5 (S.D.N.Y., Oct. 1, 2020)).

Plaintiffs only seek relief based on § 273-a, and do not allege actual intent under N.Y. Debt. & Cred. L. § 276, which provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Accordingly, I will only assess Plaintiffs' constructive fraudulent conveyance claims.

[9] N.Y. Debt. & Cred. L. § 272 ("Fair consideration is given for property, or obligation, [a.] When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or [b.] When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.").

App. Div. 2018). Federal courts in this Circuit have generally held that a preponderance standard applies to constructive fraud claims brought under the statute. *See Piccarreto*, 2016 WL 3201863, at *3 (citing *Lippe*, 249 F. Supp. 2d at 376 n.6 (S.D.N.Y. 2003); *In re Dreier LLP,* 452 B.R. 391, 442 (Bankr. S.D.N.Y. 2011); *In re Borriello,* 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005)); *see also Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 610 (S.D.N.Y. 2018) ("The burden of proof on a constructive fraud claims is preponderance of the evidence.") (citing *In re Chin*, 492 B.R. 117 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019); *Schneider v. Barnard*, 508 B.R. 533, 548 (E.D.N.Y. 2014) ("The party seeking to set aside the transfers as constructively fraudulent bears the burden to prove the elements of constructive fraud by a preponderance of the evidence."). However, intermediate appellate courts in New York State have applied a clear and convincing evidence standard, and the Court of Appeals has not resolved the dispute between the two. *Piccarretto*, 2016 WL 3201863, at *4 (citing *In re U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, 98 A.D.3d 1057, 1060 (N.Y. App. Div. 2012); *Farkas v. D'Oca*, 305 A.D.2d 237, 237 (N.Y. App. Div. 2003)). For the avoidance of doubt, the Court will apply the higher "clear and convincing evidence" standard to Plaintiffs' claims.

## II.    Post-Judgment Discovery Standard

After obtaining a money judgment, a judgment creditor "may obtain discovery from any person . . . as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). Under New York law, "[a]t any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment," using a number of discovery tools, including by issuing a subpoena requiring attendance at a deposition and by issuing an information subpoena

requiring that the recipient respond to enumerated questions under oath. N.Y. C.P.L.R. §§ 5223, 5224(a)(1), (3).

"The rules governing discovery in post-judgment execution proceedings are quite permissive," and "[t]he general rule in the federal system is that, subject to the district court's discretion, 'parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138–39 (2014) (citing Fed. R. Civ. P. 26(b)(1); *see also Axginc Corp. v. Plaza Automall, Ltd.,* No. 14-CV-4648(ARR) (VMS), 2018 WL 4771886, at *4 (E.D.N.Y. Oct. 2, 2018) ("Broad post-judgment discovery in aid of execution is the norm in federal and New York state courts.") (citations omitted). Such permissive discovery ensures that judgment creditors are "'given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *Id*. (quoting *GMA Accessories, Inc. v. Elec. Wonderland*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012)). Although the post-judgment discovery standard is generous, courts in this District have found that discovery should be specifically tailored toward revealing facts about the judgment debtor's hidden or transferred assets. *See Koon Chun Hing Kee Soy & Sauce Factory, LTD. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293 (SMG), 2010 WL 3780275, at *1 (E.D.N.Y. Sept. 22, 2010); *Jacobson v. Moller & Moller, Inc.*, No. 02-CV-6316 (ERK) (MDG), 2007 WL 1989260, at *1 (E.D.N.Y. July 5, 2007).

The Federal Rules of Civil Procedure permit a court to quash or modify an overbroad subpoena. Fed. R. Civ. P. 45(c). Additionally, "[t]he court may, for good cause, issue an order to protect a party or person form annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ.

P. 26(c)(1). The party seeking a protective order bears the burden of showing that good cause exists

to provide the protection requested. *Sealey v. C.R. England, Inc.*, No. 21-CV-3189 (FB) (TAM),

2021 WL 5409893, at *2 (E.D.N.Y. Oct. 8, 2021) (citing *In re "Agent Orange" Prod. Liab. Litig.*,

821 F.2d 139, 145 (2d Cir. 1987); *Gordon v. Target Corp.*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016);

*Giladi v. Albert Einstein Coll. of Med.*, No. 97 Civ. 9805 (DC), 1998 WL 183874, at *1 (S.D.N.Y.

Apr. 15, 1998)).

## DISCUSSION

I.   This Court Has Ancillary Jurisdiction to Hear Plaintiffs' Turnover Motion

As a threshold matter, I find that this Court has ancillary jurisdiction to preside over Plaintiffs'

motion under Rule 69(a).

When the parties provide consent, a "magistrate judge is given plenary jurisdiction by the

district court pursuant to 28 U.S.C. § 636(c)(1)." *Hunnicut v. Mangiafico*, 20 F. App'x 57, 58–59

(2d Cir. 2009) (citing *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995)); *see also*

*Roell v. Withrow*, 538 U.S. 580, 585 (2003) ("[A] § 636(c)(1) referral gives the magistrate judge

full authority over dispositive motions, conduct of trial, and entry of final judgment, all without

district court review."). Further, "the doctrine of ancillary jurisdiction . . . recognizes federal

courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to

other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

378 (1994).

"[A] federal court may exercise ancillary jurisdiction '(1) to permit disposition by a single

court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable

a court to function successfully, that is, to manage its proceedings, vindicate its authority, and

effectuate its decrees.'" *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 104–05 (2d Cir. 2001)

(quoting *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)). Where, as here, a judgment creditor seeks to void an allegedly fraudulent conveyance from a judgment debtor to a non-party to ensure the collectability of an existing judgment, such proceedings fall within the scope of the ancillary enforcement jurisdiction of the district court. *Id.* at 106–07; *see also RCA Corp. v. Tucker*, 696 F. Supp. 845, 850 (E.D.N.Y. 1988) ("[T]he authorities are unanimous that a federal court maintains ancillary jurisdiction to enforce its own judgments, and that, under Rule 69, Fed. R. Civ. P., no independent jurisdictional basis is necessary to commence an enforcement proceeding against a garnishee not a party to the original suit.").[10]

Although no court has specifically examined a magistrate judge's ancillary jurisdiction in this context where judgment was entered by that magistrate judge on consent of the parties, courts in this Circuit have found that a magistrate judge presiding on the consent of the parties can exercise ancillary jurisdiction affecting non-parties in other contexts. *See, e.g.*, *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 422 (N.D.N.Y. 2011) (finding that magistrate judge had jurisdiction over SEC's motion for sanctions in a civil enforcement action, even though wife of the investigation's target had not consented to magistrate judge's jurisdiction, where motion involved assets in which she had an

---

[10] While ancillary jurisdiction extends to post-judgment fraudulent conveyance claims, there is disagreement among courts in this jurisdiction regarding whether ancillary jurisdiction extends to actions by a judgment creditor seeking to establish a third party's independent liability under an alter ego or veil-piercing theory. *See Epperson*, 242 F.3d at 106 (distinguishing post-judgment proceedings to void a fraudulent conveyance and collect an existing judgment from claims asserted under an alter ego or veil piercing theory "that raise an independent controversy with a new party in an effort to shift liability"); *see also C.G. Holdings, Inc. v. Rum Jungle, Inc.*, 582 F. Supp. 385, 388 (E.D.N.Y. 2008) ("[C]ourts in this circuit have found that enforcement of a judgment against a third party that is predicated on alter-ego and veil-piercing theories falls outside the ancillary jurisdiction of the court."). *But see Trust v. Kummerfeld,* 153 Fed. App'x 761, 762–63 (2d Cir. 2005) ("In New York, veil-piercing actions may be initiated as supplementary special proceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b), rather than as plenary actions.") (citing *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993); *O'Brien–Kreitzberg & Assocs. v. K.P., Inc.*, 218 A.D.2d 519, 520 (N.Y. App. Div. 1995)).

Although they have not pled successor or alter-ego liability, Plaintiffs' arguments suggest that they believe Santa Catarina should be held responsible for Juquila's judgment as a successor entity. To the extent that Plaintiffs seek to hold Santa Catarina responsible as a successor to or alter-ego of Juquila, rather than obtain a turnover order for Juquila's property in Santa Catarina's possession, the exercise of jurisdiction here would likely be inappropriate. To obtain relief under such a theory, Plaintiffs would need to file a separate suit against Santa Catarina.

interest, where actual parties to action previously consented to magistrate judge's jurisdiction for any and all proceedings and to enter final order, where SEC's motion for sanctions was ancillary to its motion for preliminary injunction, and where the motion for sanctions was non-dispositive), *aff'd in part, dismissed in part,* 710 F.3d 87 (2d Cir. 2013); *United States v. O'Brien*, No. 11 CR. 652 (SLC), 2021 WL 3550230, at *6 (S.D.N.Y. Aug. 10, 2021) (finding magistrate judge had jurisdiction to enter order of garnishment where "the garnishment proceeding was a post-judgment remedy within an underlying criminal case," the government and the defendant consented to the magistrate judge's jurisdiction in the underlying criminal case, and defendant's consent to magistrate judge's jurisdiction over the garnishment proceeding "may not have been necessary in the first instance because the parties to the garnishment were the Government and [defendant's employer], not [defendant].").

In *Smith*, the District Court noted that even if the motion for sanctions was "deemed dispositive and additional consent is required for a magistrate judge to determine the SEC's motion for sanctions, which has not been required here, th[e] decision may be deemed a report-recommendation under § 636(b) and reviewed de novo by the district court or the court of appeals." *Smith*, 798 F. Supp. 2d at 422 (citing *Kiobel v. Millson*, 592 F.3d 78, 79 (2d Cir.2010)). And notably, on appeal, the Second Circuit upheld the findings of the magistrate judge, affirmed the decision on sanctions, and remanded to the magistrate judge for further proceedings on effectuating the sanctions. *Id.* at 98–99.

Given that (1) magistrate judges have plenary jurisdiction over cases where the parties consent, (2) the parties have consented to my jurisdiction, (3) enforcement proceedings to void a fraudulent conveyance fall within a court's ancillary jurisdiction, and (4) a magistrate judge hearing a case on consent can exercise ancillary jurisdiction affecting non-parties, I find that this Court's exercise

of ancillary jurisdiction is appropriate to assess Plaintiffs' fraudulent conveyance claims to enforce

its judgment against Juquila. As in *Smith*, this decision may, if needed, be deemed a report and

recommendation and may be reviewed de novo by the district court or the court of appeals.

II.    This Court Has Personal Jurisdiction Over Respondent Santa Catarina

As a second threshold matter, I find that this Court has personal jurisdiction over Santa Catarina

such that Plaintiffs' Rule 69(a) motion is properly before the Court.

In the Second Circuit, "a party seeking a money judgment against a non-party garnishee may

proceed by [Rule 69(a)] motion and need not commence a special proceeding [under CPLR

§ 5225(b)], *as long as the court has personal jurisdiction over the garnishee*." *CSX*

*Transportation, Inc. v. Island Rail Terminal, Inc.,* 879 F.3d 462, 469 (2d Cir. 2018) (quoting N.Y.

C.P.L.R. § 5225(b) (emphasis added). Since this Court sits in New York, New York law provides

the basis for exercising personal jurisdiction. *See, e.g.*, *Chufen Chen v. Dunkin' Brands, Inc.,* 954

F.3d 492, 497–98 (2d Cir. 2020) ("In the absence of a federal statute specifically directing

otherwise, and subject to limitations imposed by the United States Constitution, we look to the law

of the forum state to determine whether a federal district court has personal jurisdiction over a

foreign corporation.") (quoting *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 624 (2d Cir.

2016)).

It is well established in New York and elsewhere that "'[w]ith respect to a corporation, the

place of incorporation and principal place of business are paradigm . . . bases for general

jurisdiction' because these are places where a corporation 'is fairly regarded as at home.'" *Aybar*

*v. Aybar*, 37 N.Y.3d 274, 289 (2021) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014));

*see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). This

Court's general personal jurisdiction over Santa Catarina, Inc., a corporation incorporated under

18

the laws of New York State (*see* Cert. of Inc.), with a principal place of business at a restaurant in New York State, is both uncontested and unquestionable.

This Court's personal jurisdiction over Santa Catarina is also contingent on proper service of process. "Motions pursuant to Federal Rule of Civil Procedure 69 must be served on a transferee or garnishee 'in the same manner as a summons in an action.'" *Fabric Selection, Inc.*, 2021 WL 811371, at *5 (quoting *Saregama India, Ltd. v. Mosley*, 12 Misc. 45 (LAK), 2012 WL 955520, at *2 (S.D.N.Y. Mar. 20, 2012)); *see also* N.Y. C.P.L.R, § 5225(b) ("Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested."). *Cf. LaBarbera v. Audax Const. Corp.,* 971 F. Supp. 2d 273, 282 (E.D.N.Y. 2013) (denying motions for turnover orders for lack of personal jurisdiction due to failure to serve process on non-party garnishees). Here, Plaintiffs properly served Santa Catarina with notice of the motion via the Secretary of State of the State of New York pursuant to N.Y. Bus. Corp. L. § 306. (ECF No. 105).

Since the Court has personal jurisdiction and the motion has been properly served, the Court may proceed in determining whether Plaintiffs are entitled to summary relief. *See Axginc Corp.* 2021 WL 1030228, at *9.

III.   Plaintiffs' Motion for Turnover Order is Denied

As noted above, summary relief under Rule 69(a) and C.P.L.R. § 5225(b) may only be granted if a judgment creditor can show by clear and convincing evidence that the requirements of N.Y. C.P.L.R. § 5225(b) are satisfied and that there are no genuine disputes of material fact. Plaintiffs have not made such a showing here.

A.  <u>Plaintiffs Have Not Established Juquila's Interest in Any Property Sought</u>

The first step of the turnover test under *Beauvais* requires a showing that "the judgment debtor 'has an interest' in the property the creditor seeks to reach." *Beauvais*, 942 F.2d at 840 (quoting N.Y. C.P.L.R. § 5225(b)). A "'judgment debtor's interest in property must be understood to mean a direct interest in the property itself which, while it may require a court determination, is leviable and not an indirect interest in the proceeds of the property.'" *Amtrust N. Am., Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, No. 15 Civ. 7505, 2016 WL 6208288, at *6 (S.D.N.Y. Oct. 18, 2016) (quoting *Sumitomo Shoji New York, Inc. v. Chem. Bank New York Trust Co.*, 47 Misc. 2d 741, 746 (N.Y. Sup. Ct. 1965)); *see also Mohammad Ladjevardian, Laina Corp. v. Republic of Argentina*, 663 F. App'x 77, 79 (2d Cir. 2016) (affirming denial of turnover order by judgment creditor bondholders against non-party financial institution and finding that judgment debtor had no interest in proceeds from bond sales where it unambiguously and "irrevocably assigned" legal title to those funds to the non-party as a trustee pursuant to a settlement agreement); *In re Navigator Gas Transp. PLC*, 358 B.R. 80, 88–89 (Bankr. S.D.N.Y. 2006) (denying turnover where judgment creditors failed to show property sought was "actually subject to a beneficial interest held by" the judgment debtor).

Plaintiffs seek the turnover of "any property and assets formerly owned by Juquila, and now owned by Santa Catarina, Inc. as a result of . . . fraudulent transfer." (Pl's Mem. at 6). However, they do not identify any particular property that Juquila previously owned, do not identify any property in which Juquila has a present interest, and through their information subpoena have only just initiated the process of identifying any such property. (*See* Subpoena and Restraining Notice). Further, as Respondent correctly notes, Plaintiffs misapply the first step of the *Beauvais* standard by focusing on their own interest in the property in Santa Catarina's possession, rather than Juquila's interest in such property. (*See* Pl's Mem. at 6 (arguing that Santa Catarina "is in

20

possession of the property *in which Plaintiffs have an interest* as a result of the judgment in their favor against Juquila."); ECF No. 111 ("Resp's Opp.") at 7). In their reply brief, Plaintiffs admit the error, but respond that it is not fatal because the motion "read as a whole, is clearly premised on Juquila Mexican Cuisine Corp.'s fraudulent conveyance of its property to Santa Catarina Inc.," and because § 5225(b) "does not require a showing of the judgment debtor's interest in the subject property at all under circumstances where a fraudulent conveyance has occurred." (ECF No. 113 ("Pl's Reply") at 2). They further note that Juquila's "interest in the property is clear—the property and assets belonged to Juquila . . . until such point as they were (fraudulently) conveyed to Santa Catarina Inc." (*Id.*).

A similar set of circumstances occurred in *Axginc Corp.*, 2021 WL 1030228, at *10. There, a judgment creditor incorrectly stated the threshold element of the *Beauvais* turnover test to be the judgment creditor's interest in the money at issue, rather than the judgment debtors, and improperly "argue[d] in its reply for the first time that its motion [was] not for a garnishee turnover and that *Beauvais's* two-step test does not apply." *Id.* Because the plaintiff's memorandum of law and exhibits were "not organized in a way such that [d]efendant and [r]espondents could fairly oppose the proposed transferee test," *id.*, the *Axginc* court recommended denying plaintiff's request for a turnover order with leave to renew the motion on a properly presented transferee theory, *id.* at *12.

Unlike in *Axginc*, Plaintiffs here accurately stated the test under *Beauvais* in their opening brief, but proceeded to misapply the test. (*Compare* Pl's Mem. at 6 *with* ECF No. 98-8, *Axginc Corp. v. Plaza Automall, Ltd.*, No. 14-CV-4648 (E.D.N.Y. Feb. 13, 2020) ("First, the creditor must be shown to have an interest in the money or property."). Additionally, unlike in *Axginc*, Respondent here had an opportunity to oppose Plaintiffs' transferee theory: Santa Catarina filed a

reply brief in support of its cross-motion to quash two days after Plaintiffs' reply was served, wherein it repeats its arguments regarding Plaintiffs' failure under the first step of *Beauvais*, and addresses Plaintiffs' constructive fraudulent conveyance claims without addressing any distinctions between a garnishee and transferee turnover standard. (ECF No. 114 ("Resp's Reply") at 2–3). And, in recognition of the fact that the applicability of the first step under *Beauvais* in a fraudulent conveyance case was not the focus of their initial brief, Plaintiffs also invited further briefing from their adversary. (Pl's Reply at 2 n.1). Respondent did not seek leave to file such briefing.

Since Respondent had an opportunity to argue the issue, the Court does not find it appropriate to deny relief on the basis of Plaintiffs' failure to satisfy step one under *Beauvais* alone. Accordingly, I will move on to assess whether, even absent a showing of the judgment debtors' current interest in the property, Plaintiffs have sufficiently "demonstrated that [their] interest is superior to that of" Santa Catarina, such that they are entitled to recovery from Santa Catarina as "'a transferee of money or other personal property from the judgment debtor.'"

### B. Disputed Issues of Material Fact Preclude Summary Relief Under a Fraudulent Conveyance Theory

As noted above, Section 5225(b) may be used "'as the means to set aside a transfer made by a judgment debtor to defraud his creditors,'" and permits recovery of "a money judgment against the recipient of a fraudulent conveyance who has, in the interim, spent or dissipated the property conveyed." *Leser*, 2013 WL 3788877, at *8 (quoting *Gelbard v. Esses*, 96 A.D.2d 573, 575 (N.Y. App. Div. 1983); citing *Conte*, 204 A.D.2d at 846)). A plaintiff proves a claim for a constructively fraudulent conveyance where it establishes by clear and convincing evidence "(1) that the conveyance was made without fair consideration; (2) that they conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that

22

the defendant has failed to satisfy the judgment." *Garrison Protective Servs., Inc.*, 819 F.3d at 641 (citations omitted). The second and third elements of Plaintiffs' constructive fraudulent conveyance claim are generally undisputed: at the time of the purported conveyance, Juquila was a defendant in this action, and Juquila has since failed to satisfy the judgment entered against it. (Pl's Mem. at 8; Pl's Reply at 4). Accordingly, the dispute between Plaintiffs and Respondent centers around the adequacy of consideration underlying the transactions at issue. In particular, Plaintiffs argue that Juquila conveyed ownership of the restaurant and the property inside to Santa Catarina for no remuneration and in bad faith in order to avoid paying the judgment levied against it in this case, and that the conveyance in fact rendered the judgment unenforceable. (Pl's Mem. at 6–8).

"Fair consideration" requires both "good faith and the payment of a fair equivalent value for the property interest conveyed," and "is determined on a case-by-case basis." *Gortat*, 2018 WL 6718680, at *5 (citing *Mirvis*, 2017 WL 3981157, at *4; *Lippe*, 249 F. Supp. 2d at 377). "[W]hen seeking to set aside a [constructively fraudulent] conveyance for an absence of good faith, a plaintiff in New York is often required to prove that a transferee lacked at least one of the following: '(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent, or knowledge of the fact that the activities in question will hinder, delay, or defraud others.'" *In re Xiang Yong Gao*, 560 B.R. 50, 62 (Bankr. E.D.N.Y. 2016) (citing *S. Indus. v. Jeremias*, 411 N.Y.S.2d 945, 949 (N.Y. App. Div. 1978); *Ostashko v. Ostashko*, 00–CV–7162 (ARR), 2002 WL 32068357, at *23 (E.D.N.Y. Dec. 12, 2002); *In re Rego Crescent Corp.*, 23 B.R. 958, 969 (Bankr. E.D.N.Y. 1982)). "Under this standard, an intent to defraud is sufficient to establish bad faith, but it is by no means necessary."

*Id.* (citing *Jeremias*, 411 N.Y.S.2d at 949).[11] A creditor may also use a "'transferee's knowledge of the transferor's unfavorable financial condition at the time of the transfer'" to establish bad faith. *Id.* (quoting *Ostashko*, 2002 WL 32068357, at \*23).

To support its claim of bad faith, Plaintiffs point to a number of suspicious circumstances involving Juquila's surrender and Santa Catarina's takeover of the leased premises, including allegations (1) that the restaurant was left as-is; (2) that the "value of the lease and the fixtures in the restaurant far exceed[ed] the unpaid rent balance" owed to the Landlord; (3) that Santa Catarina was charged a reduced rent when compared with Juquila's rent, despite the Landlord's significant loss weeks before executing the lease; (4) that Mr. Bonilla and Ms. Mendez remained involved with the operations of the restaurant; (5) that Mr. Bonilla continues to live above the restaurant; (6) that "[t]he conveyance was made from father to son in [the] midst of an ongoing litigation[;]" and (7) that Mr. Bonilla represented to the Court that the restaurant was owned by Dr. Vilar, rather than his son, Darion Mendez. (Pl's Mem. at 7–8; Pl's Reply at 3).

Despite these multiple indicia of fraud, Santa Catarina argues that Plaintiffs' allegations rest on the incorrect premise that a conveyance was made from Juquila to Santa Catarina. (Resp's Opp. at 7). Instead, they argue, two separate transactions occurred: (1) Juquila surrendered its lease of

---

[11] Although Plaintiffs do not allege actual fraud under § 276, Courts frequently look to "badges of fraud" to establish an inference of fraudulent intent in cases brought under an actual intent theory. Such badges of fraud include: "(1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Mirvis*, 2018 WL 4921631 at \*5 (quoting *Olympia Mortg. Corp.*, 2011 WL 2414685, at \*8). "While the presence or absence of any particular badges of fraud is not determinative in finding fraudulent intent, 'the presence of multiple indicia will increase the strength of the inference.'" *Id.* (quoting *MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995)). "'Transfers among family members raise special concerns, and receive different scrutiny.'" *Id.* (quoting *Perrone v. Amato*, No. 09-CV-316 (AKT), 2017 WL 2881136, at \*28 (E.D.N.Y. July 5, 2017)).

Because these badges of fraud are relevant to the assessment of intent, and because a showing of intent to defraud is sufficient to establish bad faith, these badges of fraud are also relevant to determine whether the parties acted in bad faith here.

the premises to the Landlord on February 18, 2019 in exchange for his forgiveness of Juquila's overdue rent and utility payments, and (2) Santa Catarina in good faith entered into a new lease of the premises with the Landlord on March 7, 2019 for consideration in the form of rental payments. (*Id.* at 8). Because "Plaintiffs . . . concede that there was no 'direct transfer' of the restaurant between" Juquila and Santa Catarina, Respondent argues that the fraudulent transfer statute is inapplicable. (Resp's Reply at 2).

Assuming that Respondent is correct that there was technically no direct transfer between Juquila and Santa Catarina, "fraudulent conveyance law looks at substance, not form." *In re Tronox, Inc.,* 503 B.R. 239, 276 (Bankr. S.D.N.Y.2013) (citing *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir.1993); *MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Services Co.*, 910 F.Supp. 913 (S.D.N.Y.1995)); *see also Mitchell v. Lyons Pro. Servs., Inc.*, 109 F. Supp. 3d 555, 568–69 (E.D.N.Y. 2015) ("If there is one area of the law that has little regard for form over substance, it is fraudulent conveyance law, for parties and their lawyers frequently demonstrate ingenuity in attempting to camouflage the economic reality of transactions with distressed companies."), *aff'd sub nom. Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636 (2d Cir. 2016); *Kinderhill Corp.*, 991 F.2d at 36 (courts "will not turn a blind eye to the reality" that a challenged conveyance "constituted a single, integrated transaction."). With that maxim in mind, "[i]t is well established that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction for analysis under the [Uniform Fraudulent Conveyance Act]." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995).

While "a lack of good faith may serve as an independent ground to set aside a conveyance," *In re Xiang Yong Gao*, 560 B.R. at 62 (citing *In re Palermo*, No. 08–CV–7421 (RPP), 2011 WL 3874866, at *13 (S.D.N.Y. Sept. 2, 2011); *In re Dr. J. Herbert Fill*, 82 B.R. 200, 216 (Bankr.

S.D.N.Y. 1987), *aff'd*, 549 Fed. App'x 38 (2d Cir. 2014)), a Court may not collapse a transaction on the basis of bad faith alone; rather, "the transferee in the leg of the transaction sought to be voided must have actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent." *Frank*, 48 F.3d at 635–36 (citing *Kupetz v. Wolf*, 845 F.2d 842, 847–49 (9th Cir.1988); *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 249 (2d Cir.1987); *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1296 (3d Cir.1986); *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 998 (S.D.N.Y.1991); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 502–03 (N.D. Ill.1988)). This knowledge requirement "protect[s] innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme," but knowledge may be attributed as a matter of law to a transferee who was "aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry." *Id.* at 636.

Key issues here, then, are the knowledge and intent of the transferees—the Landlord and Santa Catarina—with respect to the conveyance of the restaurant premises, and the equipment and tools therein. The record before the Court as gleaned through the parties' briefing and the public dockets contains conflicting narratives regarding the adequacy of consideration received in exchange for Juquila's surrender of the lease (*i.e.,* whether Juquila owned some tools and equipment that could have been liquidated to satisfy the Judgment versus whether substantially all of the contents of the restaurant belonged to the Landlord) such that the structure and good faith of the transactions may be in question. And even if actual knowledge is lacking, the Landlord should have been aware of the circumstances of Juquila's poor financial condition and its impending judgment debt to Plaintiffs as a co-creditor in Juquila's bankruptcy. Further, Santa Catarina should have been aware of Juquila's poor financial condition and impending judgment debt because it is partially owned

by the individual Defendants' son and because the individual Defendants have played some role in Santa Catarina's operations.

Moreover, while New York law does not generally consider the granting of a preference to one creditor over another to be either actually or constructively fraudulent, *see Dussault v. Republic of Argentina*, 616 F. App'x 26, 28 (2d Cir. 2015) (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir.2005); *Frank*, 48 F.3d at 634), New York courts recognize "one exception to the rule that preferential payments of pre-existing obligations are not fraudulent conveyances: preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration." *Frank*, 48 F.3d at 634. Accordingly, the identities of both Juquila's and Santa Catarina's shareholders, officers, and directors, and the extent of any overlap between the two, is directly relevant.

The knowledge and intent of those shareholders, officers, and directors, is also of key importance. While Respondent maintains that Santa Catarina was a good faith purchaser and was unaware of any intent to defraud Juquila's judgment creditors (Resp's Opp. at 9),[12] their argument largely focuses on the formal distinction between the two legs of the transaction by which it was able to take possession of Juquila and its equipment (along with the restaurant's name, menu, and employees) to the potential detriment of Juquila's creditors without directly addressing the various badges of fraud to which Plaintiffs point to indicate bad faith in the transaction when viewed as a whole. For example, Santa Catarina fails to explain why greater scrutiny regarding the interfamily aspects of the transaction is unwarranted, fails to address the fact that Mr. Bonilla omitted his son's

---

[12] Respondent also notes that a second statute, Debt. & Cred. L. § 278, gives priority to fair value purchasers without knowledge of a vendor's fraud who obtain property before the judgment creditor obtained a lien over the property. (Def's Opp. at 4). Plaintiffs note in response that Santa Catarina had knowledge of the pending lawsuit when Santa Catarina was formed and when it took ownership and operation of the restaurant, and notes that "'[w]here the transferee is aware of an impending enforceable judgment against the transferor, they conveyance does not meet the statutory good faith requirement and generally will be set aside as constructively fraudulent.'" (Pl's Reply at 4 (quoting *Sardis v. Frankel*, 978 N.Y.S.3d 135, 143 (N.Y. App. Div. 2014)).

involvement in the operation of Santa Catarina in reporting that Juquila was under new ownership, fails to address the fact that Santa Catarina was incorporated with an address of Juquila restaurant before Juquila exited bankruptcy and closed down, fails to address the fact that Santa Catarina applied for a liquor license in February 2019 before Juquila was closed and before Dr. Vilar purportedly entered an oral agreement to own and operate the company, and fails to plausibly address Mr. Bonilla's and Ms. Mendez involvement in the operation of Santa Catarina's business, albeit in more limited capacities as advisor to Dr. Vilar and as a cashier or delivery person, respectively.

Suffice it to say, there are a number of open questions with respect to the key players' good faith, knowledge, intent, and potential participation in a scheme to defraud Juquila's judgment creditors by transferring the restaurant's lease and equipment through the Landlord to Santa Catarina. These issues of material fact are in dispute, such that summary relief would be inappropriate. Accordingly, an evidentiary hearing is necessary to determine whether the transaction, viewed as a whole, should be treated as a fraudulent conveyance. *See, e.g.*, *Disney Enterprises, Inc. v. Finanz St. Honore, B.V.*, No. 13-CV-6338 (NG) (SMG), 2020 WL 489530, at *5 (E.D.N.Y. Jan. 30, 2020) (deferring ruling on turnover motion to hold evidentiary hearing where disputed issues of fact preclude summary relief, and ordering evidentiary hearing to determine whether relevant agreement constituted a fraudulent conveyance); *Advanced Video Techs. LLC v. HTC Corp.*, 11 Civ. 6604 (CM), 2019 WL 4198769, at *1 (S.D.N.Y. Aug. 12, 2019) (denying summary relief and ordering evidentiary hearing to assess alter ego claims brought in Rule 69(a) and § 5225(b) proceeding); *Irving & William H. Stark, Inc. v. Milberg Factors, Inc.*, 38 A.D.2d 526 (N.Y. App. Div. 1971) (per curiam) (finding that while judgment creditor did not sustain its burden of proving as a matter of law that funds sought from respondent belonged to

judgment debtor, "the interests of justice" required that judgment creditor "should have an opportunity of developing facts at a hearing where respondent and holder of security interest "can be examined with respect to the source and ownership" of the property).

Accordingly, Plaintiffs' motion for a turnover order is denied, with leave to refile after disputed issues of fact have been resolved.

IV.    Santa Catarina's Cross-Motion to Quash Plaintiffs' Subpoena Is Denied

Respondent argues that they are entitled to relief from compliance with Plaintiffs' information subpoena because it is overbroad, because "Santa Catarina's responses will not lead to evidence that could bear on any issue in this case," and because "Santa Catarina's confidential information sought by Plaintiffs is not relevant to claims and defenses in this action." (Resp's Opp. at 9–10). I disagree.

Plaintiffs' information subpoena lists just four questions, seeking: (1) the identity of a deponent to respond to the questions contained in the subpoena, (2) the identity of Respondent's stockholders, officers, and directors, (3) information regarding whether Respondent "has within its possession, custody, or control any property in which [Juquila] has or had an interest," and (4) an itemized list of any such property. (Subpoena and Restraining Notice at 4–5).

Taking into account the generous post-judgment discovery standard applicable here, these questions are quite narrowly tailored toward the identification of Juquila's hidden assets. *See NML Cap., Ltd.*, 573 U.S. at 138–39; *Koon Chun Hing Kee Soy & Sauce Factory, LTD.*, 2010 WL 3780275, at *1. Contrary to Respondent's objections, the identity of property to which Juquila has or had an interest is undoubtedly relevant here, as that it the property that might be available to satisfy Plaintiffs' outstanding judgment. Further, as noted above, the identity of Santa Catarina's officers, shareholders, and directors is relevant to the existence of a constructively fraudulent

conveyance. Accordingly, the Court finds that Plaintiffs' subpoena is not overly broad and that Santa Catarina's responses will likely lead to relevant evidence in this case such that quashing or modifying the subpoena is unwarranted.

As noted above, the party seeking a protective order bears the burden to show good cause for the entry of such an order. *See Sealey*, 2021 WL 5409893, at *2. The Court is unpersuaded by Respondent's conclusory statements that that a four question information subpoena is "an overbroad, invasive, harassing, and illegal fishing expedition to obtain . . . confidential information" warranting a protective order, and that disclosure of the information sought "would result in irreparable and unreasonable prejudice, expense, annoyance, and disadvantage to Non-Party, Santa Catarina." (Resp's Opp. at 10*.*). Indeed, Respondent provides no explanation at all for its conclusion that irreparable harm and unreasonable prejudice, expense, or annoyance will be visited upon Santa Catarina by answering four straightforward questions, and does not explain why the information Plaintiffs seek should be considered confidential and merits protection. *See, e.g.*, *Rofail v. United States*, 227 F.R.D. 53, 57 (E.D.N.Y. 2005) ("[D]espite moving under Rule 26(c), defendant does not attempt to establish good cause, by specific facts or articulated reasoning, to justify the grant of a protective order.")*.*

Because Respondent has not presented any specific facts that would establish good cause for the entry of a protective order, the cross-motion is denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for a turnover order is granted to the extent that the Court finds it has jurisdiction to preside over these Rule 69(a) and § 5225(b) proceedings, and has personal jurisdiction over Respondent, but is otherwise denied at this time. Respondent's cross-motion to quash is denied in its entirety. Respondent is therefore directed to comply with

Plaintiffs' information subpoena by April 29, 2022. After Santa Catarina has served responses to the information subpoena on Plaintiffs, the Plaintiffs, Defendants, and Respondent are directed to confer and to present to the Court, by May 27, 2022: (1) an agreed statement of facts relating to the dispute, (2) a statement indicating what issues of fact remain, and (3) a statement of what additional discovery, if any, will be needed to resolve those issues. The parties shall then attend a status conference by telephone on June 1, 2022 at 12:00 PM.

**SO ORDERED**.

_____
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 31, 2022
Brooklyn, NY